*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2001 FED App. 0169P (6th Cir.)
File Name:  01a0169p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
   *Plaintiff-Appellee,*

  *v.*       No. 99-5203

SHANNON STRAYHORN,
   *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Covington.
No. 98-00003—William O. Bertelsman, District Judge.

Argued:  March 9, 2001

Decided and Filed:  May 22, 2001

Before:  SILER, MOORE, and CLAY, Circuit Judges.

_____

### COUNSEL

**ARGUED:**  Renee L. Alsip, Covington, Kentucky, for
Appellant. Fred A. Stine V, ASSISTANT UNITED STATES
ATTORNEY, Covington, Kentucky, for Appellee.
**ON BRIEF:** Deanna L. Dennison, Covington, Kentucky, for
Appellant. Fred A. Stine V, ASSISTANT UNITED STATES
ATTORNEY, Covington, Kentucky, Charles P. Wisdom, Jr.,
ASSISTANT UNITED STATES ATTORNEY, Lexington,
Kentucky, for Appellee.

1

_____

**OPINION**

_____

KAREN NELSON MOORE, Circuit Judge.   Shannon Strayhorn, the defendant-appellant in this case, appeals his mandatory minimum sentence of 120 months' imprisonment and 8 years' supervised release for his role in a marijuana distribution conspiracy.   Specifically, Strayhorn challenges the district court's finding of the amount of drugs attributable to him for sentencing purposes.   According to Strayhorn, the Supreme Court's decision in *Apprendi v. New Jersey*, 120 S. Ct. 2348 (2000), renders unconstitutional a district court's determination of drug quantity by a preponderance of the evidence when that finding serves to increase the default statutory penalty to which the defendant is exposed.  Based on our circuit's recent case law, we must agree.   We therefore **VACATE** Strayhorn's sentence and **REMAND** to the district court for resentencing in accordance with this opinion.

### I.  BACKGROUND

As part of an undercover operation into drug activity in the Northern Kentucky and Greater Cincinnati, Ohio area conducted by the Drug Enforcement Administration ("DEA"), federal agents recorded several conversations between Alfred Phillips ("Phillips") and another individual.   As a result of these conversations, DEA agents were alerted to Phillips's attempt to purchase $30,000 worth of marijuana from a Mexican supplier at a local restaurant in Covington, Kentucky.   On December 30, 1997, a DEA agent posing as the Mexican supplier staged a controlled sale of marijuana to Phillips.   Phillips was subsequently arrested attempting to purchase 38 pounds of marijuana from the DEA agent; two pounds of marijuana were also recovered from Phillips's car.

Subsequent to his arrest, Phillips agreed to cooperate with the DEA agents in their investigation of other individuals involved in the marijuana trade in Greater Cincinnati. Pursuant to this agreement, Phillips advised the agents that

resentence the defendant under § 841(b)(1)(D) and the Sentencing Guidelines.

Had the district court required Strayhorn's relevant conduct to be proved beyond a reasonable doubt, Strayhorn may not have been held responsible for over 100 kilograms of marijuana and the mandatory minimum under § 841(b)(1)(B) would not have applied. Not only would his statutory sentencing range have been lesser, but he would not have been saddled with the increased social opprobrium that accompanies the higher degree of criminal culpability assigned to him.

### III.  CONCLUSION

Because the district court's factual finding of drug quantity by a preponderance of the evidence transformed the crime to which the defendant pleaded guilty (conspiracy to possess less than fifty kilograms of marijuana punishable by a maximum ten-year sentence) into a greater crime for the purposes of sentencing (conspiracy to possess over 100 kilograms of marijuana punishable by a mandatory minimum ten-year sentence), the district court's finding violated Strayhorn's Fifth and Sixth Amendment rights. Consequently, we must **VACATE** the defendant's sentence and **REMAND** for resentencing. Because Strayhorn waived his right to a jury trial by pleading guilty, *cf. Rebmann*, 226 F.3d at 524, the district court may either choose to determine beyond a reasonable doubt the drug quantity for relevant conduct or to

---

legislatively authorized penalty. *See Witte*, 515 U.S. at 399. In *Watts*, decided two years later, the Supreme Court analyzed the constitutionality of a defendant's sentence which was calculated according to relevant conduct for which the defendant had been acquitted at trial. The defendant had been tried on two counts of possession with intent to distribute cocaine; she was convicted on the first count, which involved one ounce of cocaine, and acquitted on the second, which involved five ounces. The Supreme Court held that the district court could properly sentence the defendant using six ounces of cocaine to determine relevant conduct, despite the fact that the defendant had been acquitted on one of the counts. *Watts*, 519 U.S. at 157. Significant to this case, the amount of cocaine from the second count did not subject the defendant in *Watts* to an increased statutory penalty range.

Shannon Strayhorn had loaned him $18,000 toward the foiled marijuana purchase on December 30 and that he had regularly been purchasing marijuana from Strayhorn for the past several months. Phillips began recording his conversations with Strayhorn for the DEA agents. From the information gleaned from these recordings, federal agents executed a search at Strayhorn's residence on January 17, 1998, where they recovered 48 pounds of marijuana, $3,000 in cash, and a handgun.

Strayhorn, Phillips, and others were indicted on two counts of drug charges in the Eastern District of Kentucky on January 14, 1998. In count one, the government charged Strayhorn and co-defendants with conspiracy to possess with intent to distribute and conspiracy to distribute "a measurable quantity of marijuana" between December 1997 and January 1998, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Joint Appendix ("J.A.") at 26. Count two charged that on December 30, 1997, Strayhorn and co-defendants, aided and abetted by each other, attempted to possess with intent to distribute fifty pounds of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846 and 18 U.S.C. § 2.

Strayhorn initially entered a plea of not guilty on February 26, 1998. On April 16, 1998, Strayhorn filed a motion for rearraignment; on June 3, 1998, his retained counsel filed a motion to withdraw. Both motions were subsequently granted. On September 28, 1998, Strayhorn again sought rearraignment to enter a guilty plea. Pursuant to an oral plea agreement acknowledged on the record, Strayhorn ultimately pleaded guilty, on October 19, 1998, to count one of the indictment. As part of the oral plea agreement, Strayhorn explicitly reserved the right to challenge the amount of drugs attributable to him as relevant conduct under United States Sentencing Guidelines ("U.S.S.G.") § 1B1.3, and the government agreed to dismiss count two as to him at sentencing.

At the plea hearing before the magistrate judge, Strayhorn specifically and repeatedly expressed reservations about the

amount of marijuana that would be attributed to him by the district court during the sentencing phase. While acknowledging his guilt for the amount of marijuana seized from his home and from co-defendant Phillips, he explicitly denied responsibility for any additional marijuana for which the government sought to hold him responsible. In fact, he informed the magistrate judge that he disagreed with the stipulated factual basis accompanying his plea: although the factual basis stated that the government could prove at trial that Strayhorn would have attempted to purchase 75 additional pounds of marijuana the day after the government arrested Phillips, Strayhorn denied this fact. J.A. at 170-71 (Plea Hr'g). Strayhorn also asked the magistrate judge for a definition of relevant conduct, but the judge declined to define the term for him. J.A. at 175.

On October 21, 1998, Strayhorn sent a letter to the court, construed as a motion to withdraw his guilty plea, in which he requested appointment of new counsel. In the letter, Strayhorn reiterated his willingness to accept responsibility for 88 pounds of marijuana, but he stated that he was unwilling to plead guilty until other matters in his case were addressed. J.A. at 70. The court reviewed Strayhorn's request and denied it, although the court did order the government to meet with him and exchange documentation relating to his relevant conduct. J.A. at 181 (Presentence Report).

The United States Probation Office prepared a presentence report shortly after Strayhorn entered his plea. The probation officer calculated Strayhorn's base offense level under U.S.S.G. § 2D1.1 by determining Strayhorn's "relevant conduct" pursuant to § 1B1.3. Under § 1B1.3, the defendant's base offense level is determined by assessing the "relevant conduct" in which the defendant engaged, including "the specific acts and omissions for which the defendant is to be held accountable" as well as conduct which was not part of the offense of conviction. *See* U.S.S.G. § 1B1.3 comment. (n.1, 3). The probation officer attributed to Strayhorn 188 kilograms, or 414 pounds, of marijuana. There is no

Under *Ramirez*, if the government seeks to convict and sentence Strayhorn under § 841(b)(1)(B) for conspiracy to possess more than 100 kilograms of marijuana, it must indict him appropriately and then prove the elements of that offense beyond a reasonable doubt. Otherwise, the government may indict a defendant under the provision with the lowest statutory maximum sentence and then, as in this case, rely on relevant conduct findings to achieve what it otherwise might not if held to a higher burden of proof, namely a sentence under a separate offense's enhanced penalty provision. Of course, it is clearly permissible "for judges to exercise discretion–taking into consideration various factors relating both to offense and offender–in imposing a judgment within the range prescribed by statute." *Apprendi*, 120 S. Ct. at 2358; *see also United States v. Watts*, 519 U.S. 148, 157 (1997) (holding that criminal conduct of which defendant is acquitted may be used as sentencing factor if proved by preponderance of the evidence). Thus, the government may still rely upon a district court's finding of relevant conduct by a preponderance of the evidence, *see McMillan v. Pennsylvania*, 477 U.S. 79, 91-92 (1986), but only insofar as it "operates solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it" and does not "alter[] the maximum penalty for the crime committed nor create[] a separate offense calling for a separate penalty," *id.* at 87-88. *See also Witte v. United States*, 515 U.S. 389, 397 (1995) (explaining that defendant is not punished under Double Jeopardy analysis for uncharged conduct when relevant conduct finding produces sentence within statutorily authorized punishment range).[2]

---

[2]Although the Supreme Court has not addressed the particular question before us, it has never condoned a drug sentence calculated pursuant to relevant conduct findings that increase the statutory penalty range to which the defendant is exposed. In *Witte*, the defendant was sentenced under § 841(b)(1)(B) for possession of 100 kilograms or more of marijuana; his statutory sentencing range was between 5 to 40 years. The Supreme Court approved the inclusion of an additional quantity of cocaine from an earlier transaction for purposes of quantifying the defendant's base offense level because the higher Guidelines range to which the defendant was exposed did not exceed the scope of the

imprisonment, the mandatory minimum under § 841(b)(1)(A), based on a quantity of drugs determined by the district court under the preponderance-of-the-evidence standard. We applied the analysis in *Apprendi* to Ramirez's sentence and concluded that "'the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed,' such as moving up the scale of mandatory minimum sentences, invokes the full range of constitutional protections required for 'elements of the crime.'" *Ramirez*, 242 F.3d at 351. Vacating Ramirez's sentence, we held that "[a]ggravating factors, other than a prior conviction, that increase the penalty from a nonmandatory minimum sentence to a mandatory minimum sentence, or from a lesser to a greater minimum sentence, are now elements of the crime to be charged and proved." *Id.* at 351-52. Were we to adopt the government's argument that Strayhorn's sentence is permissible because it is equivalent to the default statutory maximum, we would be forced to turn a blind eye to the reasoning in *Flowal*. We would also be compelled to overrule *Ramirez* because Strayhorn's sentence was clearly enhanced from "a nonmandatory minimum sentence to a mandatory minimum sentence" by facts neither charged nor proved beyond a reasonable doubt. This we cannot do. *See Salmi v. Sec'y of Health and Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985).

In the instant case, the district court's drug quantity finding increased the statutory sentence to which Strayhorn was exposed from a *maximum* term of ten years' imprisonment pursuant to 21 U.S.C. § 841(b)(1)(D) to a mandatory *minimum* sentence of ten years' imprisonment under § 841(b)(1)(B). Strayhorn never pleaded guilty to the elements of the offense under § 841(b)(1)(B) nor were they charged or proved beyond a reasonable doubt. Thus, Strayhorn was effectively sentenced under a separate statutory offense with a higher penalty range than the default penalty provision under § 841(b)(1)(D). It matters not, according to *Ramirez*, that the statutory maximum for § 841(b)(1)(D) is equivalent to the statutory mandatory minimum for § 841(b)(1)(B).

indication in the presentence report how the probation officer arrived at the 188 kilogram figure. This drug quantity yielded a base offense level of 26 under § 2D1.1(c)(7), which was then reduced by a three-point downward adjustment for acceptance of responsibility, producing a total offense level of 23. Strayhorn's criminal history category was determined to be level III, which included a prior felony drug offense. A total offense level of 23 and criminal history category III yielded a sentencing range under the Guidelines of between 57 and 71 months. Because, however, the statutory minimum sentence for conspiracy to possess 188 kilograms of marijuana for a defendant with a prior felony drug conviction is a mandatory minimum of ten years' imprisonment pursuant to 21 U.S.C. § 841(b)(1)(B)(vii), the probation officer noted that Strayhorn must, pursuant to U.S.S.G. § 5G1.1(b), be sentenced to the statutory mandatory minimum. Thereafter, Strayhorn filed an objection to the presentence report's use of 188 kilograms in determining his base offense level. J.A. at 195.

The district court conducted a sentencing hearing on February 8, 1999. When the district court ascertained Strayhorn's intention to plead guilty, Strayhorn again reiterated that he wished to plead guilty only to the amount of marijuana seized from Phillips, 40 pounds, and the amount seized from Strayhorn's home, 48 pounds. J.A. at 91, 94 (Sentencing Hr'g). The government explained that it believed it could show that Strayhorn's relevant conduct involved a conspiracy to sell, over a several-month period, approximately 375 pounds of marijuana in addition to the 88 pounds for which Strayhorn conceded responsibility. J.A. at 95. The government then offered Phillips as its principal witness to establish the amount of marijuana involved in the conspiracy.

Phillips testified that Strayhorn approached him in May 1997 to strike up a business relationship. According to Phillips, he purchased varying amounts of marijuana from Strayhorn, ranging from ten to sixty pounds a month, from May through December of 1997. The court noted that Phillips had testified that he purchased or was "fronted"

approximately 260 pounds of marijuana from Strayhorn, in addition to the 88 pounds which were actually seized. J.A. at 105. Strayhorn then testified and disputed Phillips's characterization of their relationship; according to Strayhorn, Phillips was *his* supplier of small quantities of marijuana for approximately six months in 1997. Strayhorn denied selling marijuana to Phillips, although he admitted lending him $18,000 for the purchase of marijuana on the day Phillips was arrested.

At the end of the hearing, the district court stated that it credited Phillips's testimony over Strayhorn's: "[T]he testimony of Mr. Phillips was clear and concise, straightforward, went down the line, gave clear and concise numbers, whereas I find the testimony of the defendant to be highly evasive and not worthy of belief . . . ." J.A. at 143. The district court then adopted the factual findings and Guidelines calculation in the presentence report and sentenced Strayhorn to 120 months' imprisonment and eight years of supervised release, pursuant to the mandatory minimum sentence required by 21 U.S.C. § 841(b)(1)(B) for a drug offense involving, inter alia, more than 100 kilograms of marijuana.

On appeal, Strayhorn challenges the attribution of 188 kilograms of marijuana to him for relevant conduct under § 1B1.3. In his brief to this court, Strayhorn asserted that the district court erred by crediting Phillips's testimony over his own and by calculating Strayhorn's drug quantity according to Phillips's testimony; Strayhorn also argued that the district court violated his due process rights by determining his relevant conduct by a preponderance of the evidence instead of a higher evidentiary burden.

Subsequent to the briefing in this case but before oral argument, the Supreme Court handed down *Apprendi v. New Jersey*, 120 S. Ct. 2348 (2000), which held, at its essence, that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved

violation of §§ 841(a)(1) and 841(b)(1)(A). He pleaded not guilty and was convicted by a jury for the substantive offense. The district court determined the amount of drugs for sentencing purposes by a preponderance standard. The court concluded that Flowal was responsible for 5.008 kilograms of cocaine and, pursuant to § 841(b)(1)(A), sentenced Flowal to life in prison, which was a mandatory minimum sentence given Flowal's two prior felony drug convictions. On appeal, we held that the district court erred in determining the amount of drugs by a preponderance-of-the-evidence standard. We determined that, consistent with *Apprendi*, the drug amount should have been determined by a jury beyond a reasonable doubt because "a finding as to the weight of the drugs determined the range of penalties that would apply to Flowal." *Flowal*, 234 F.3d at 936. Significant to this case, we rejected the argument that the district court did not err because the penalty imposed – life imprisonment – did not exceed the prescribed statutory maximum sentence for either § 841(b)(1)(A) or the lesser penalty provision, § 841(b)(1)(B). We noted that the life sentence was *mandatory* under § 841(b)(1)(A) but was the statutory *maximum* under § 841(b)(1)(B) and that the district court's determination of the drug quantity "took away any discretion in terms of imposing a shorter sentence." *Id.* at 937. Because "[t]he judge's determination effectively limited the range of applicable penalties and deprived Flowal of the opportunity to receive less than life imprisonment without the possibility of release," *id.*, we vacated the defendant's sentence and remanded to the district court.

In *Flowal*, the district court's life sentence was also in excess of the default statutory maximum, 30 years, under § 841(b)(1)(C) for defendants with prior felony drug convictions. Thus, while similar, *Flowal* is arguably distinguishable from the present case. *Ramirez*, however, is not. Because of his prior felony conviction, Ramirez was subject to a maximum thirty-year sentence under § 841(b)(1)(C) for conspiring to distribute and attempting to possess with the intent to distribute an unspecified amount of cocaine. After a jury trial, he was sentenced to 20 years'

Amendments and will require resentencing. *See Ramirez*, 242 F.3d at 351.

Recently, we noted that an *Apprendi* violation may occur when a defendant pleads guilty to a drug offense as well as when he chooses to take his case to trial. *See United States v. Harper*, 246 F.3d 520, 2001 WL 331986, *9 (6th Cir. 2001); *cf. United States v. Rebmann*, 226 F.3d 521, 524-25 (6th Cir. 2000) (vacating defendant's sentence for violation of 21 U.S.C. § 841(a) imposed pursuant to guilty plea because district court's finding that distribution of drugs caused death or serious bodily injury resulted in unconstitutional sentence enhancement under *Apprendi*). Today we confirm that principle. Our rationale is simple: the defendant who pleads guilty to an unspecified amount of drugs and is then sentenced under the preponderance-of-the-evidence standard may just as easily be subjected to an enhanced sentence in excess of the default statutory maximum as the defendant who takes his case to trial and is then sentenced by the district court under the same preponderance-of-the-evidence standard. This holding follows inexorably from *Flowal*, *Ramirez*, and *Harper*, and its outcome is dictated by *Apprendi*.

The government argues that *Apprendi* does not apply in this case because Strayhorn's sentence of 120 months does not exceed the statutory maximum under § 841(b)(1)(D), the default maximum for marijuana offenses when the defendant has a prior felony conviction.[1] In *Flowal*, the defendant was indicted for possession of 5.2 kilograms of cocaine, in

---

[1] The penalties for a marijuana offense when the defendant has one prior felony drug conviction are as follows: minimum 20 years to maximum life sentence for 1,000 kilograms or more (§ 841(b)(1)(A)); minimum 10 years to maximum life sentence for 100 kilograms or more (§ 841(b)(1)(B)); maximum thirty years' imprisonment for 50 to 100 kilograms (§ 841(b)(1)(C)); maximum ten years' imprisonment for up to 50 kilograms (§ 841(b)(1)(D)). These sentences significantly overlap, creating the potential for the situation, such as this case, in which a defendant is convicted under the default provision of § 841(b)(1)(D) but sentenced, pursuant to a district court finding of drug quantity by the preponderance standard, under a higher penalty provision.

beyond a reasonable doubt." *Apprendi*, 120 S. Ct. at 2362-63. At oral argument, Strayhorn explicitly framed his argument as a constitutional challenge to his sentence based on *Apprendi*. According to Strayhorn, his sentence violates *Apprendi* and is unconstitutional for two reasons: first, because the indictment failed to specify the amount of drugs for which the government intended to hold him responsible, and thus did not afford Strayhorn adequate notice of his crime; and second, because the district court established his drug quantity by a preponderance of the evidence, thus denying Strayhorn his Fifth Amendment due process right to have every element of the offense proved beyond a reasonable doubt. Strayhorn seeks a remand to the district court so that his sentence may be recalculated.

In its brief, the government contended that the district court did not err in its calculations of drug quantity for relevant conduct purposes. The government also argued that Strayhorn waived his constitutional challenge to his sentence, and that, even if not waived, the district court did not commit constitutional error by using the preponderance of the evidence standard, as this was the standard dictated by our precedent. At oral argument, the government conceded that its waiver argument must fail in light of this court's recent precedent in *United States v. Hayes*, 218 F.3d 615 (6th Cir. 2000), although the government argued that Strayhorn's constitutional claim could succeed only if the district court's error affected his substantial rights. When pressed on the question how *Apprendi* affects this case, the government asserted that Strayhorn's sentence did not violate *Apprendi* because the sentence of 120 months was technically within the legislatively prescribed default statutory maximum.

## II. ANALYSIS

### A. Standard of Review

We first must determine the relevant standard of review for Strayhorn's constitutional challenge to his sentence. This case comes to us on direct appeal. Because he is asserting a new constitutional rule that was decided while his case was

pending, Strayhorn may properly assert this claim. *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987). Contrary to the government's assertions that Strayhorn's constitutional challenge was waived, we believe the record makes plain that Strayhorn preserved his challenge by repeatedly objecting to the drug quantity determination at his plea hearing and at his sentencing hearing, as well as in a written objection to the calculation of his base offense level in his presentence report. Although he did not utter the words "due process" at either of these hearings, he made it well known that he disputed the district court's factual finding with respect to drug quantity. We conclude that he adequately preserved his challenge to his sentence. *Cf. United States v. Neuhausser*, 241 F.3d 460, 466 (6th Cir. 2001) (noting that where defendants failed to object when district court made its determination of drug quantities, then objection has been waived and review is for plain error); *United States v. Page*, 232 F.3d 536, 543 (6th Cir. 2000) (same). We therefore review Strayhorn's constitutional challenge to his sentence de novo. *United States v. Lloyd*, 10 F.3d 1197, 1220 (6th Cir. 1993).

**B.  *Apprendi* Analysis**

This case requires us to add to our burgeoning case law interpreting the Supreme Court's decision in *Apprendi v. New Jersey*, 120 S. Ct. 2348 (2000). *Apprendi* addressed the question, in the context of a state prosecution, "whether the Due Process Clause of the Fourteenth Amendment requires that a factual determination authorizing an increase in the maximum prison sentence for an offense from 10 years to 20 years be made by a jury on the basis of proof beyond a reasonable doubt." *Apprendi*, 120 S. Ct. at 2351. The Supreme Court answered this constitutional question in the affirmative.

We have held that *Apprendi* teaches several principal lessons: first, that "[t]he offense charged in an indictment must be stated with sufficient 'certainty and precision' so 'that there can be no doubt as to the judgment which should be given if the defendant is convicted;'" second, that "courts

must count any 'fact' that increases the 'penalty beyond the prescribed statutory maximum' as an element of the offense 'except for one important exception,' *i.e.*, 'the fact of a prior conviction;'" and third, "that it 'is unconstitutional for a legislature' to treat 'facts that increase the prescribed range of penalties to which a criminal defendant is exposed' as mere sentencing factors, rather than facts to be established as elements of the offense." *United States v. Ramirez*, 242 F.3d. 348, 350-51 (6th Cir. 2001) (citations omitted).

*Apprendi* has had significant repercussions for drug prosecutions under 21 U.S.C. § 841(a) and sentencing under § 841(b), which prescribes staggered maximum and mandatory minimum penalties for drug offenses dependent upon, inter alia, drug quantity. Already, we have held, pursuant to *Apprendi*, that the government must name in the indictment the quantity of drugs for which it seeks to hold the defendant responsible under 21 U.S.C. § 841(a), and that the determination of drug quantity under § 841(b) must, when it subjects the defendant to an enhanced sentence, be considered an element of the offense rather than a sentencing factor. *See Ramirez*, 242 F.3d at 351; *United States v. Flowal*, 234 F.3d 932, 938 (6th Cir. 2000). In *Flowal*, we explained that each penalty provision of § 841(b) constitutes a different crime with different elements, including drug weight, which must be proved beyond a reasonable doubt when sentencing a defendant in excess of the default statutory maximum set out in § 841(b)(1)(C) for all drugs except marijuana, or in § 841(b)(1)(D) for marijuana. Our sister circuits have uniformly agreed with us. *See United States v. Nance*, 236 F.3d 820, 824 (7th Cir. 2000) (citing *United States v. Rogers*, 228 F.3d 1318, 1326-28 (11th Cir. 2000); *United States v. Doggett*, 230 F.3d 160 (5th Cir. 2000); *United States v. Angle*, 230 F.3d 113 (4th Cir. 2000); *United States v. Nordby*, 225 F.3d 1053, 1056 (9th Cir. 2000); *United States v. Rebmann*, 226 F.3d 521, 524 (6th Cir. 2000); *United States v. Aguayo-Delgado*, 220 F.3d 926, 931 (8th Cir. 2000)). Failure to comply with these strictures is, we have held, a violation of the defendant's constitutional rights under the Fifth and Sixth