**UNITED STATES of America,
Plaintiff,**

v.

**Brian BROWN, Defendant.**

**No. 99–80035–05.**

United States District Court,
E.D. Michigan,
Southern Division.

July 19, 2001.

J. Michael Buckley, U.S. Attorney's Office, Detroit, MI, for Plaintiff.

Richard M. Lustig, Birmingham, MI, Suzanna Kostovski, Detroit, MI, for Defendant.

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR NEW TRIAL

ROSEN, District Judge.

### I. INTRODUCTION

On January 30, 2001, Defendant Brian Brown was convicted by a jury of conspiracy to distribute cocaine and cocaine base (crack cocaine), in violation of 21 U.S.C. §§ 846 and 841(a)(1). On April 27, 2001, Defendant, through his new post-trial counsel, brought a motion for new trial, arguing (i) that his trial counsel was ineffective in failing to raise a statute of limitations defense to the conspiracy charge, and in seeking a special verdict form to cure the indictment's failure to recite any of the penalty provisions found at 21 U.S.C. § 841(b)(1); (ii) that the Government engaged in prosecutorial misconduct by failing to properly inform the grand jury of a possible statute of limitations defense, and by referring in a January 21, 2000 Supplemental Bill of Particulars to drug transactions in 1993 and 1994, despite a purported lack of evidence in support of these allegations; (iii) that this Court lacks jurisdiction to sentence Defendant, in light of the omission from the indictment of any of the § 841(b)(1) penalty provisions; and (iv) that review of the jury verdict reveals that the Government did not prove all of the elements of the charged drug conspiracy beyond a reasonable doubt.

The Government responded to this motion on May 11, 2001.[1] Defendant then filed a reply brief in support of his motion on May 22, 2001, and supplemental briefs on June 4, 2001 and July 6, 2001. On July 11, 2001, the Court held a hearing on Defendant's motion.[2] Having reviewed the

---

1. That same day, the Government filed a motion to strike an appendix of materials submitted by Defendant on May 3, 2001 in support of his motion for new trial. The Government argues that these materials are largely superfluous to the disposition of Defendant's motion, and thus should be disregarded. Some of these materials, however, already are part of the record, such as the Government's Supplemental Bill of Particulars and the transcripts of portions of the trial. Defendant's appendix of materials also includes cases and other legal authorities purportedly bearing on the issues raised in Defendant's motion. Finally, Defendant has submitted an excerpt of the transcript of the grand jury proceedings in this matter, and a portion of a post-trial letter from his trial counsel dated March 22, 2001.

As to these latter materials, the Court has reviewed them in order to better understand the nature of Defendant's contentions, and the Court is confident of its ability to accord them only the weight and significance to which they are entitled under the law. Thus, the Court declines to grant the Government's motion. This ruling, however, is without prejudice to the Government's opportunity to challenge the inclusion of any of these materials in the record on appeal.

2. Just a few days before this hearing, on July 3, 2001, Defendant filed a motion requesting that, in the event that the Court is inclined to deny his new trial motion as untimely brought, this motion should instead be construed as an attack on his custody and sen-

parties' submissions, the relevant testimony at trial, and the record as a whole, and having considered the arguments of counsel at the July 11 hearing, the Court now is prepared to rule on Defendant's motion. This Opinion and Order sets forth the Court's rulings.

## II. *ANALYSIS*

### A. Defendant's Motion for New Trial Is Untimely.

Defendant's motion for a new trial is governed by Fed.R.Crim.P. 33, which provides, in relevant part:

> On a defendant's motion, the court may grant a new trial to that defendant if the interests of justice so require .... A motion for new trial based on newly discovered evidence may be made only within three years after the verdict or finding of guilty .... A motion for a new trial based on any other grounds may be made only within 7 days after the verdict or finding of guilty ....

Fed.R.Crim.P. 33. As noted, the jury returned its verdict on January 30, 2001, but Defendant did not move for a new trial until April 27, 2001, well past Rule 33's presumptive 7-day deadline. Accordingly, the Government argues that Defendant's motion is time-barred. The Court agrees, with the lone exception of Defendant's jurisdictional challenge to the indictment.

■ The Sixth Circuit has held that the 7–day period set forth in Rule 33 is "a jurisdictional limit on the district court's power to act." *United States v. Vincent,* 20 F.3d 229, 237 (6th Cir.1994) (internal quotations and citation omitted). Thus, unless Defendant's motion is grounded on newly discovered evidence, this Court lacks the power to address it. Moreover, because a Rule 33 motion beyond the 7–

day period undermines the finality of the jury's verdict, "[m]otions for a new trial based upon newly discovered evidence are disfavored and should be granted with caution." *United States v. Turns,* 198 F.3d 584, 586 (6th Cir.2000); *see also United States v. Seago,* 930 F.2d 482, 488–89 (6th Cir.1991).

■ In his present motion, Defendant argues that each of his asserted bases for seeking a new trial rests upon newly discovered evidence. First, regarding his claims of ineffective assistance of counsel, Defendant contends that he did not discover the purported defects in his trial counsel's performance until he retained new attorneys who advised him of these alleged errors. The Government responds that evidence of ineffective assistance of counsel generally is not deemed "newly discovered" within the meaning of Rule 33, so long as the facts supporting such a claim were known to Defendant at the time of trial. *See Vincent,* 20 F.3d at 237; *Seago,* 930 F.2d at 488–90; *United States v. Greene,* 971 F.Supp. 1117, 1141 (E.D.Mich. 1997). Defendant acknowledges this general rule, but nevertheless asserts that he was unaware, until well after trial, of the "facts" (i) that his trial counsel was operating under a misunderstanding of the scope and applicability of the statute of limitations defense to the charged drug conspiracy, and (ii) that his trial counsel had permitted, and perhaps even brought about, an improper constructive amendment to the indictment through a pre-trial motion based on the Supreme Court's recent decision in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

The Sixth Circuit, however, has expressly held that such newly discovered "facts"

tence under 28 U.S.C. §§ 2255 and/or 2241(c)(3). The Court addresses this matter

below.

concerning the deficient performance of trial counsel do not warrant relief from Rule 33's 7-day limitation. Specifically, in *Seago, supra*, a case cited in Defendant's own reply brief, the Court rejected a claim quite similar to the one advanced here—namely, that defendant Seago's motion for new trial was based on "newly discovered evidence" of his counsel's failure to raise a particular defense at trial. The Sixth Circuit observed that, in an effort "[t]o skirt the 'newly discovered' evidence requirement of Rule 33, Seago cleverly attempts to shift the focus of our review away from evidence which he and his trial counsel were aware of at trial to his trial counsel's strategy which was unsuccessful in obtaining a not guilty verdict." *Seago*, 930 F.2d at 488. The Court, however, construed Rule 33 as distinguishing between trial strategy and underlying evidence:

> Tactical errors committed in the course of trial, such as a failure to pursue [a] defense ..., are facts within Seago's knowledge at the time of trial. Seago reasons that he did not appreciate the legal significance of his counsel's rejection of the defense until after trial. However, we believe that "[a]n interpretation that would consider facts known at the time of trial to be 'newly discovered,' if cloaked in the garb of a claim of ineffective assistance of counsel, flies in the face of the plain meaning of the rule and the traditional understanding of the narrowness of the time exception" ....

The district court properly denied the motion because the evidence was not, in fact, newly discovered. Where facts alleged in support of an ineffective assistance of counsel claim were known by the defendant at the time of trial, the defendant fail[s] to satisfy the newly discovered evidence requirement of Rule 33. We interpret Rule 33 to proscribe attempts to change defense strategy after an unfavorable verdict by claim that evidence that the defendant or defense counsel knew but elected not to present at trial is newly discovered.

\* \* \* \* \* \*

Seago's trial counsel's pursuit of an alternate theory which was not persuasive does not, after the jury's verdict, constitute newly discovered evidence of ineffective assistance of counsel. Seago contends that, as a layperson, he did not understand the legal significance of [certain evidence]. Seago's failure to appreciate the legal significance of his trial counsel's development of an alternate defense theory does not transform evidence discussed prior to trial into "newly discovered" evidence within the meaning of Rule 33. A claim "[b]elatedly pursued is not newly discovered."

930 F.2d at 489–90 (citations omitted); *see also United States v. Osorio–Pena*, 247 F.3d 14, 19 (1st Cir.2001) ("The majority of circuits ... have held that facts giving rise to ineffective assistance claims are not newly discovered evidence under Rule 33 if the facts were available to the defendant at trial but he or she did not appreciate their legal significance" (citing *Seago* and decisions from the First, Second, Fifth, Seventh, and Ninth Circuits).).

In so ruling, *Seago* quoted with approval from *United States v. Ellison*, 557 F.2d 128 (7th Cir.1977). In *Ellison*, the Seventh Circuit conceded that a defendant might find it difficult to discover a defect in his trial counsel's performance within the 7-day limit imposed by Rule 33, but nevertheless found no basis for departing from the Rule's express requirement that evidence in support of a motion beyond the 7-day limit must be "newly discovered":

> We recognize that defendants unhappy with the representation they received at trial, particularly those unable to retain counsel privately as did Ellison, often will be unable to obtain a new attorney in sufficient time to permit them

either to file a motion for a new trial within the seven days of verdict required by Rule 33, or else to seek an extension of time for the filing of such a post-trial motion as permitted by the Rule. The practical difficulties faced by defendants seeking to raise ineffective-assistance-of-counsel claims by way of motions for new trial, however, do not give us cause to corrupt the clear language of Rule 33. Newly discovered evidence must be newly discovered.

*Ellison*, 557 F.2d at 133; *see also Greene*, 971 F.Supp. at 1141 (noting that " 'good cause' arguments have no place in the context of Rule 33's jurisdictional time limits," and deeming it "irrelevant for purposes of Rule 33's time requirements that the defendant's new new-trial argument was advanced for the first time by new counsel appointed to take over the defendant's case following the withdrawal of the defendant's original trial counsel"); *Osorio–Pena*, 247 F.3d at 19 ("Rule 33 puts the burden on the defendant to raise concerns about his lawyer's investigation of evidence within seven days."). Moreover, the *Ellison* Court acknowledged a conflicting decision in *United States v. Brown*, 476 F.2d 933 (D.C.Cir.1973), but stated:

> Unlike the District of Columbia Circuit, we have no reason to doubt the adequacy of post-conviction remedies for petitioners such as Ellison who urge vacation of their convictions by reason of constitutionally deficient trial representation that could not be argued on direct appeal because based on evidence outside the trial record. Ellison and similarly situated defendants can raise their Sixth Amendment claims and support them with evidence outside the trial record in post-conviction proceedings pursuant to 28 U.S.C. § 2255 . . . .

*Ellison*, 557 F.2d at 134 (footnote omitted).

In light of these precedents, and particularly the binding *Seago* decision, the Court must reject Defendant's ineffective assistance of counsel claims as untimely raised outside the 7–day limit decreed in Rule 33. Regarding Defendant's claim that his trial counsel should have pursued a statute of limitations defense to the drug conspiracy charge, there is no question that Defendant himself, of all people, would have been uniquely aware at all times before trial of any alleged withdrawal from the conspiracy that might have triggered the running of the five-year period of limitation. Defendant cannot claim to have "newly discovered" that he allegedly withdrew from the conspiracy by making a statement to the authorities following his arrest in 1992; he can, at best, claim only that his trial counsel misinformed him as to the legal significance of this event. Under *Seago*, this latter "discovery" of allegedly imprudent trial strategy does not constitute newly discovered evidence within the meaning of Rule 33.

Similarly, regarding Defendant's claim that his trial counsel erroneously sought and obtained a constructive amendment to the indictment to cure an alleged *Apprendi* violation, Defendant presumably was aware that his trial counsel had raised an *Apprendi* challenge to the indictment in a pre-trial motion filed on December 20, 2000.[3] In this motion, Defendant requested either the dismissal of the indictment or, in the alternative, a special verdict form instructing the jury to make specific findings as to the drug types and quantities involved in the charged conspiracy.

---

**3.** In fact, it is the Court's recollection that Defendant himself was present at a December 21, 2000 hearing on one of Defendant's earlier motions, and that Defendant's *Apprendi* motion was discussed, albeit not ruled upon, during the course of the December 21 hearing.

In addition, Defendant was apprised of the outcome of his *Apprendi* challenge, by virtue of his presence in the courtroom when the jury was presented with a special verdict form that was similar, though not identical, to the one sought in his December 20 motion. Thus, the only "new discovery" Defendant can claim is the advice of his present counsel that his trial attorney erred in proposing a special verdict form that purportedly failed to cure an alleged *Apprendi* violation in the indictment. Again, all of the pertinent *facts* underlying the *Apprendi* issue were known to Defendant before the close of trial; only his understanding of their *legal significance* changed when he retained new post-trial counsel.[4]

Finally, in a brief filed on July 6, 2001, just a few days before his July 11 sentencing, Defendant has raised three more allegations of ineffective assistance of counsel: (i) his trial counsel's failure to object when the Court referred to the "crime of possession with intent to distribute or to distribute" in the course of its jury instructions, (1/26/2001 Trial Tr. at 96), where the indictment charged only a conspiracy to distribute (and not to possess) cocaine and cocaine base; (ii) trial counsel's failure to seek a judgment of acquittal when the jury purportedly failed to find him guilty of conspiring to distribute *both* cocaine and cocaine base, as charged in the indictment; and (iii) trial counsel's cross-examination of Special Agent James Doby, in which counsel opened the door for questioning by the Government on redirect examination regarding money seized from Defendant by the FBI in 1992. Once again, however, cursory inspection reveals that the facts underlying each of these claims were known to Defendant by the time the jury returned its verdict, so that no lack of factual knowledge prevented Defendant from raising these claims in a timely motion for new trial. Rather, only his present legal theories, and not their supporting facts, were arguably unknown to Defendant at the close of trial.

█ Next, turning to Defendant's claims of prosecutorial misconduct, the Court again finds no "newly discovered" evidence that might excuse Defendant's failure to raise these claims within 7 days after the jury returned its verdict. Defendant cites two examples of purported misconduct: (i) the Government's failure to fully and properly instruct the grand jury that, under the applicable statute of limitations, the Government had to establish that Defendant remained a member of the charged conspiracy within five years preceding the January 20, 1999 date of the initial indictment; and (ii) the recitation in the Government's January 21, 2000 Supplemental Bill of Particulars of certain drug transactions occurring in 1993 and 1994 and involving Defendant, where the Government purportedly knew, through its interviews of the relevant witnesses, that it would be unable to present any evidence at trial in support of these allegations.

The facts underlying these claims unquestionably were known to Defendant by the close of trial. Specifically, in support of his claims, Defendant cites (i) the transcripts of the grand jury proceedings, (ii) the Supplemental Bill of Particulars, (iii) the testimony of witnesses Ronald and Donnell Simpson at trial; and (iv) certain DEA–6 investigative reports reflecting the

---

4. Indeed, given that Defendant's December 20, 2000 motion raised most, if not all, of the *Apprendi*-based challenges made in Defendant's present motion—namely, that the indictment is deficient for failure to cite any of the specific penalty subsections of 21 U.S.C. § 841(b), and for failure to state the specific drug quantities allegedly involved in the conspiracy—it can hardly be said that this aspect of Defendant's motion for new trial turns upon a "new discovery" of any sort, whether of facts or legal strategy.

Government's pre-trial interviews of various witnesses.[5] All of these materials were available to Defendant before the jury returned its verdict. Accordingly, none of them constitutes "newly discovered evidence" that would excuse Defendant's failure to bring his Rule 33 motion within 7 days after trial.

## B. Defendant's Legal Challenges to His Indictment and Conviction Lack Merit.

Apart from claiming ineffective assistance of counsel and prosecutorial misconduct, Defendant's present motion raises two legal challenges to the Court's sentencing authority in this case. First, as alluded to earlier, Defendant suggests that the indictment in this case runs afoul of the Supreme Court's *Apprendi* decision, and that this violation divests the Court of jurisdiction to impose a sentence. Next, Defendant argues that the jury did not find him guilty as to all of the essential elements of the charged drug conspiracy, thereby dictating a judgment of acquittal. Under the standards of Fed.R.Crim.P. 33, it is evident that the Court cannot address the merits of these two contentions, as they plainly do not rest on "newly discovered evidence" unavailable to Defendant at the close of trial. In the words of the *Seago* Court, these claims are merely "belatedly pursued," and not "newly discovered."

The question becomes, however, whether such legal or jurisdictional challenges to the judgment of conviction may be addressed at the present juncture, before Defendant has been sentenced, through some procedural device other than a Rule 33 motion for new trial. At first glance, Fed.R.Crim.P. 34 appears to provide such a mechanism, authorizing a defendant to bring a motion to "arrest judgment" if the indictment "does not charge an offense or if the court was without jurisdiction of the offense charged." Yet, so construed, Defendant's legal challenges run afoul of Rule 34's further requirement that "[t]he motion in arrest of judgment shall be made within 7 days after verdict or finding of guilty." Thus, this aspect of Defendant's motion remains untimely, whether viewed under Rule 33 or Rule 34.

 However, as observed in a leading treatise, Rule 34's 7–day limit is arguably at odds with Fed.R.Crim.P. 12(b)(2), which instructs that jurisdictional defects "shall be noticed by the court at any time during the pendency of the proceedings":

> There is an inconsistency in this respect between Rule 34, on arrest of judgment, and Rule 12(b)(2). The same objections here discussed, lack of jurisdiction and failure of the indictment or information to charge an offense, are the stated grounds on which Rule 34 permits a motion for arrest of judgment. Yet that rule permits such a motion to be made only within seven days after verdict ..., while Rule 12(b)(2) makes it mandatory that the court notice precisely the same defect at any time during the pendency of the proceedings. The Supreme Court has observed this inconsistency, but did not have to resolve it. The lower courts have considered that Rule 12, rather than the restricted time limit of Rule 34, is controlling.

1A Charles Alan Wright, Federal Practice and Procedure, § 193, at 334–35 (3d ed.1999) (footnotes with citations omitted). As noted in the treatise, there is very little recent decisional law on this question, but the limited case law suggests that, so long as these proceedings are pending, the

---

**5.** These latter materials were provided to the Court by defense counsel on July 5, 2001 for *in camera* review.

Court may entertain Defendant's *Apprendi*-based jurisdictional challenge, and perhaps also his claim that the jury did not find him guilty of all of the elements of the offense charged in the indictment. *See, e.g., United States v. Gama–Bastidas,* 222 F.3d 779, 785 & n. 3 (10th Cir.2000). Accordingly, viewing these challenges as brought under Rule 12(b)(2), the Court turns to their merits.[6]

Defendant's *Apprendi*-based claim is readily resolved. Indeed, the Court already ruled on this matter in the context of Defendant's pre-trial *Apprendi* motion, and finds no basis to depart from this ruling. In essence, Defendant reads into the Supreme Court's *Apprendi* decision a requirement that the indictment in this case must have expressly cited one of the penalty provisions found at 21 U.S.C. § 841(b), as well as reciting the specific quantities of cocaine and crack involved in the charged drug conspiracy. Defendant's argument, however, represents a far-reaching and unwarranted extension of *Apprendi* and its Sixth Circuit progeny.

Initially, it is important to note that *Apprendi* appears, at least to this Court, to be a case far more about *sentencing* than about *indictment,* and far more about the Sixth Amendment right to a *trial by jury* than about the Fifth Amendment right of grand jury indictment. *Cf. United States v. Brough,* 243 F.3d 1078 (7th Cir. 2001) (observing that "*Apprendi* principally concerns the division of responsibility between judge and jury," while also "affect[ing] the burden of persuasion"). *Apprendi* states its holding thus: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." *Apprendi,* 530 U.S. 466, 120 S.Ct. at 2362–63, 147 L.Ed.2d 435. By its literal terms, nothing in this holding imposes the requirements posited by Defendant here. In fact, the *Apprendi* Court expressly reserved the "indictment question" for another day:

> Apprendi has not here asserted a constitutional claim based on the omission of any reference to sentence enhancement or racial bias in the indictment. He relies entirely on the fact that the "due process of law" that the Fourteenth Amendment requires the States to provide to persons accused of crime encompasses the right to a trial by jury, and the right to have every element of the offense proved beyond a reasonable doubt. That Amendment has not, however, been construed to include the Fifth Amendment right to "presentment or indictment of a Grand Jury" .... We thus do not address the indictment question separately today.

*Apprendi,* 120 S.Ct. at 2355–56 n. 3.

Nevertheless, some courts, seizing upon certain language in *Apprendi*—language

---

**6.** Regarding Defendant's claim that the jury did not, in fact, convict him of the conspiracy offense charged in the indictment, the Court acknowledges that its decision to reach this claim under Rule 12(b)(2) is highly debatable. Arguably, this contention should have been raised in a motion for judgment of acquittal under Fed.R.Crim.P. 29(c). Once again, this Rule, like Rules 33 and 34, requires that a motion be brought within 7 days after the jury returns its verdict, and Fed.R.Crim.P. 45(b) generally prohibits any extension of this 7-day limit, with certain exceptions not applicable here. Further, in *Carlisle v. United States,*

517 U.S. 416, 421, 116 S.Ct. 1460, 1464, 134 L.Ed.2d 613 (1996), the Supreme Court confirmed that these rules mean what they say, holding that "[t]here is simply no room in the text of Rules 29 and 45(b) for the granting of an untimely postverdict motion for judgment of acquittal, regardless of whether the motion is accompanied by a claim of legal innocence, is filed before sentencing, or was filed late because of attorney error." In light of *Carlisle,* this Court addresses Defendant's claim only reluctantly, and out of an abundance of caution.

which, in light of the above-quoted passage, could only be dicta—have found in that decision a requirement that indictments in drug cases brought under 21 U.S.C. §§ 841 and 846 must recite the drug types and quantities involved in the charged offense. *See, e.g., United States v. Fields*, 242 F.3d 393, 396 (D.C.Cir.2001); *United States v. Jones*, 235 F.3d 1231, 1236 (10th Cir.2000). The Sixth Circuit, while not squarely addressing this question, has included language in some of its decisions suggesting a similar result. *See, e.g., United States v. Strayhorn*, 250 F.3d 462, 467–68 (6th Cir.2001) ("Already, we have held, pursuant to *Apprendi*, that the government must name in the indictment the quantity of drugs for which it seeks to hold the defendant responsible under 21 U.S.C. § 841(a)" (citing *United States v. Ramirez*, 242 F.3d 348, 351 (6th Cir.2001), and *United States v. Flowal*, 234 F.3d 932, 938 (6th Cir.2000)).) Yet, in other cases, the Sixth Circuit has found no violation of *Apprendi*, despite the absence of any reference to drug quantities in the indictment. *See, e.g., United States v. Garcia*, 252 F.3d 838, 842–43 (6th Cir.2001); *United States v. Harper*, 246 F.3d 520, 523, 530–31 (6th Cir.2001); *United States v. Neuhausser*, 241 F.3d 460, 466, 468, 471–72 & n. 9 (6th Cir.2001); *United States v. Munoz*, 233 F.3d 410, 412–14 (6th Cir.2000). Whatever else can be said about these seemingly conflicting precedents, the Court's research has not uncovered a single post-*Apprendi* Sixth Circuit decision in which the outcome turned upon the omission of drug quantities from the indictment.

■ In any event, the Court need not resolve this issue, because the present indictment satisfies even the broadest possible reading of *Apprendi* and its Sixth Circuit progeny. The first superseding indictment charges Defendant, in pertinent part, with conspiring "to distribute controlled substances, that is, quantities of cocaine and cocaine base (crack cocaine), both Schedule II Controlled Substances, contrary to Title 21, United States Code, Section 841(a)(1); all in violation of Title 21 United States Code, Section 846." The indictment further charges that "[s]aid unlawful conspiracy involved more than 5 kilograms of cocaine and more than 50 grams of cocaine base (crack cocaine)." This language satisfies even the dicta in *Strayhorn, supra,* that "the government must name in the indictment the quantity of drugs for which it seeks to hold the defendant responsible under 21 U.S.C. § 841(a)." *Strayhorn,* 250 F.3d at 467–68. Either of the quantities recited in the indictment, standing alone, would, if found by the jury beyond a reasonable doubt, expose Defendant to the enhanced statutory sentencing range set forth at 21 U.S.C. § 841(b)(1)(A)—specifically, a prison term ranging from 10 years to life.

As noted earlier, the jury found Defendant guilty of the charged conspiracy and, with respect to the quantities alleged in the indictment, found that he had conspired to distribute 50 grams or more of cocaine base, but not 5 kilograms or more of cocaine. These factual findings, based on the express language of the indictment and submitted to the jury for determination beyond a reasonable doubt, fully suffice to sustain a term of imprisonment in the range of 10 years to life without running afoul of any tenable interpretation of *Apprendi* or its progeny. Further, because the minimum drug amounts charged in the indictment triggered the peak sentencing range set forth at § 841(b)(1)(A), there was no need for the Government to further specify in the indictment the *exact* amounts of cocaine and crack cocaine, beyond these minimums, that were involved in the conspiracy. *See, e.g., United States v. DeLeon*, 247 F.3d 593, 597 (5th Cir.2001) (holding that "an indictment's allegation of

a drug-quantity range, as opposed to a precise drug quantity, is sufficient to satisfy *Apprendi* and its progeny"). Moreover, nothing in *Apprendi, Strayhorn,* or any other case of which this Court is aware imposes the *additional* requirement that the indictment must expressly cite the applicable penalty subsection of § 841(b) under which the Government seeks to proceed.

Rather, the worst that can be said about the indictment here is that it fails to refer to each and every one of the statutory provisions underlying the charged drug conspiracy—it cites §§ 841(a)(1) and 846, but does not separately reference any subsection of § 841(b). To be sure, Fed. R.Crim.P. 7(c)(1) requires that an indictment "shall state for each count the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged therein to have violated." Yet, that same Rule further provides that "[e]rror in the citation *or its omission* shall not be ground for dismissal of the indictment or information or for reversal of a conviction if the error *or omission* did not mislead the defendant to the defendant's prejudice." Fed.R.Crim.P. 7(c)(3) (emphasis added).

■ Thus, it has long been established, consistent with Rule 7(c), that "the indictment is not invalidated because it cited the wrong statute," and that "a miscitation of a statute is not grounds for dismissing the indictment unless the defendant is misled thereby." *United States v. Garner,* 529 F.2d 962, 966 (6th Cir.1976). Rather, "the recitation of specific facts contained within the indictment, alone, is sufficient to adequately inform the defendant[ ] of the na-

ture of the charges." 529 F.2d at 966. Such is the case here, where the recitation of drug quantities in the indictment amply apprised Defendant that he would be subject, if convicted, to the enhanced sentencing range of § 841(b)(1)(A). Defendant has not argued that he was misled by the indictment's failure to reference this penalty provision, and the Court cannot imagine how he could credibly claim otherwise. Accordingly, the Court rejects Defendant's *Apprendi*-based challenge to the indictment.[7]

Next, Defendant argues that the jury failed to find him guilty of all of the elements of the charged drug conspiracy, where the special verdict form reveals the jury's findings of (i) guilty of conspiracy to distribute 50 grams or more of cocaine base, but (ii) not guilty of conspiracy to distribute 5 kilograms or more of cocaine. Since the indictment charged Defendant with conspiracy to distribute *both* cocaine *and* cocaine base (crack cocaine), and the jury was instructed in accordance with this charge, Defendant reasons that the jury failed to find him guilty of the charged offense, involving *both* drugs, and instead found him guilty only of the *uncharged* offense of conspiring to distribute crack cocaine only.

■ Defendant's argument, however, is flatly precluded by *Griffin v. United States,* 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991), in which the Supreme Court held that a jury's general verdict of guilty on a multiple-object conspiracy charge is sustainable so long as the evidence is sufficient to support conviction as to *any one* of the objects. *See also United*

---

7. The Court also notes that the sentence ultimately imposed in this case, 188 months of imprisonment, does not exceed the 20–year statutory maximum for drug offenses involving an indeterminate amount of cocaine. *See* 21 U.S.C. § 841(b)(1)(C). Thus, even if the types and quantities of cocaine were not listed in the indictment and submitted to the jury for determination beyond a reasonable doubt, Defendant's sentence still would not pose a problem under *Apprendi. See Garcia, supra,* 252 F.3d at 842–43.

*States v. Payne,* 962 F.2d 1228, 1234 (6th Cir.1992) ("[T]he insufficiency of the evidence as to one of multiple objectives of a conspiracy charged in a single count does not require setting aside a general verdict of guilty on the charge."). Thus, if the Court had declined Defendant's pre-trial request to use a special verdict form, and had instead asked the jury to return a general verdict on the charge of conspiracy to distribute cocaine and crack cocaine, a verdict of guilty would have been fully sustainable under *Griffin,* even if the Government had offered absolutely no evidence that Defendant conspired to distribute cocaine, or even if—more to the point, in light of the special verdict actually returned in this case—it were known to a certainty that the jury intended to acquit Defendant of conspiring to distribute cocaine. *Cf. United States v. Dale,* 178 F.3d 429, 431–32 (6th Cir.1999) (following *Griffin* and holding, in a case where the indictment charged a multiple-object drug conspiracy, that an ambiguity in a general jury verdict provided no basis for overturning the defendant's conviction, but at most affected his sentence).

Surely, the Government is not in a worse position for having joined in Defendant's request for a special verdict form, and for having secured an unambiguous jury determination, beyond a reasonable doubt, that Defendant was guilty of conspiring to achieve at least one of the two objects set forth in the indictment. Further, as noted above, this single object, standing alone, subjects Defendant to the enhanced penalties set out in § 841(b)(1)(A), meaning that there is no sentencing issue here of the sort confronting the Sixth Circuit in *Dale* and *Neuhausser, supra.* Accordingly, the Court rejects Defendant's contention that the jury failed to find him guilty of each of the essential elements of the charged drug conspiracy.[8]

### D. The Court Declines to Treat Defendant's Motion as Brought Under 28 U.S.C. §§ 2255 or 2241(c)(3).

Finally, in the event that, as ruled above, the Court deemed Defendant's motion to be untimely under Rule 33, Defendant asks that his present motion be converted to a motion brought under 28 U.S.C. §§ 2255 or 2241(c)(3). Although the Court arguably has the discretion to do so, the Court finds that such an action would be unduly premature.

As Defendant points out, the Sixth Circuit generally declines to address claims of ineffective assistance of counsel on direct appeal, preferring instead that such claims be brought in post-conviction proceedings under 28 U.S.C. § 2255. *See, e.g., Neuhausser, supra,* 241 F.3d at 474. From this principle, Defendant reasons that this Court should treat his motion as one brought under § 2255, and should reach his ineffective assistance claims in the pending proceedings, rather than delaying their determination until Defendant has pursued any desired direct appeal of his conviction and/or sentence.[9]

---

**8.** In addition, as the Government pointed out at the July 11 hearing, the special verdict in this case could be read as reflecting the jury's finding that Defendant conspired to distribute *both* cocaine powder and crack cocaine, with the jury merely harboring a reasonable doubt that the *amount* of cocaine powder involved in the conspiracy exceeded 5 kilograms. This wholly plausible interpretation of the jury verdict provides an independent basis for sus-

taining Defendant's conviction against the present challenge.

**9.** For present purposes, the Court assumes, without deciding, that it has the authority to treat Defendant's motion as brought under § 2255, despite the fact that Defendant was not yet, as of the date his motion was filed, been, "in custody under sentence" of this Court as required under that statute.

■■■ What Defendant fails to acknowledge, however, is the equally important—and, given the present situation, more directly relevant—principle that a District Court should not, absent "extraordinary circumstances," entertain a collateral § 2255 attack upon a conviction and sentence until a defendant has exhausted his direct avenues of review. *See United States v. Robinson*, 8 F.3d 398, 405 (7th Cir.1993); *see also Smith v. United States*, 89 F.3d 835, 1996 WL 330864, at *1 (6th Cir. June 14, 1996) (quoting *Robinson* with approval). "The rationale for the rule is a sound one: the disposition of the appeal may render the [§ 2255] motion moot." *Robinson*, 8 F.3d at 405 (internal quotations and citation omitted). Defendant has not identified any extraordinary circumstances that might warrant immediate consideration of his claims of ineffective assistance of counsel and prosecutorial misconduct. To the contrary, though the Court does not reach these claims, its initial review leads to the preliminary conclusion that they are lacking in merit.[10]

10. Because the Court and counsel devoted a significant portion of the July 11 hearing to a discussion of Defendant's claims on the merits, the Court need only add a few brief comments and observations here. First, regarding the claims of ineffective assistance of counsel, Defendant's chief complaint is that his trial attorney should have raised a statute of limitations defense on his behalf. As noted at the hearing, however, such a defense could not have succeeded unless Defendant could show that he "took affirmative action to defeat or disavow the purpose of the conspiracy." *United States v. Lash*, 937 F.2d 1077, 1083 (6th Cir.1991). The only "affirmative action" identified by Defendant is his statement to the FBI following his arrest on June 9, 1992, in connection with another alleged drug conspiracy, separate from the conspiracy charged in the present case. As one of several versions of events offered by Defendant during the course of this 1992 interview, Defendant named an unindicted co-conspirator in the present case, Shawn McKinney, as one of the sources of the funds that Defendant intended to use to purchase cocaine at the time of his arrest. Yet, this 1992 statement did not disclose the names of any of the ten co-conspirators charged in the present indictment, nor did it divulge any of the transactions involved in the present conspiracy. Even assuming that this statement could be construed as evidencing Defendant's withdrawal from the conspiracy in which he was participating at the time of his arrest, it is a far cry from a "full confession" or "making a clean breast to the authorities" with regard to the *different* conspiracy charged in this case, as necessary to commence the running of the statute of limitations. *See United States v. Chambers*, 944 F.2d 1253, 1265 (6th Cir. 1991); *United States v. Grimmett*, 150 F.3d 958, 961 (8th Cir.1998). Absent proof of an affirmative act of withdrawal, it does not matter whether, as claimed by defense counsel at the July 11 hearing, there was little or no evidence of Defendant's active participation in the charged conspiracy in the five years preceding the present indictment; "[m]ere cessation of activity is not sufficient" to constitute withdrawal. *Lash*, 937 F.2d at 1083. Moreover, even an affirmative withdrawal can be "neutralized" through subsequent actions indicating a "continued acquiescence" in the objects of the conspiracy, *Lash*, 937 F.2d at 1084, and the Government offered evidence at trial, such as a 1998 picture of Defendant with two of his co-conspirators, that could support such a finding of acquiescence.

Given all these obstacles to Defendant's successful assertion of a statute of limitations defense, Defendant and his trial counsel reasonably could have concluded that the introduction into evidence of his 1992 statement—in which, after all, he admitted to drug trafficking activities—likely would do a great deal more harm than good. Indeed, they apparently reached just this conclusion, as Defendant affirmatively moved before trial to *exclude* the evidence relating to his 1992 arrest, including his statement to the FBI. Ultimately, the Court agreed that this evidence should be excluded, and vigilantly kept it out at trial, with one limited exception when trial counsel "opened the door" to testimony of money seized from Defendant at the time of his arrest. And, of course, in light of this exclusion, at Defendant's own request, the Government had no occasion to put on proofs challenging the 1992 statement's validity as a "full confession." That Defendant's trial strategy failed to secure an acquittal does not make it any less a matter of strategy, or any more likely to

Moreover, while Defendant apparently believes that his claims are ripe for immediate consideration, the Court observes that the Government was not afforded a sufficient opportunity to respond in writing to the arguments presented in Defendant's most recent submissions, just days before the July 11, 2001 date set for hearing and sentencing.

Consequently, the Court declines to depart from the general rule that Defendant should pursue, if he wishes, a direct appeal of his conviction and sentence before commencing any collateral proceedings. This ruling, of course, is without prejudice to Defendant's entitlement, subject to the time limits and other conditions set forth in the governing statutes, to assert any or all of the above ineffective assistance and prosecutorial misconduct claims in a subsequent motion under § 2255, along with any other claims he might wish to pursue in such a collateral proceeding.

### III. *CONCLUSION*

For the reasons set forth above,

IT IS HEREBY ORDERED that Defendant's April 27, 2001 Motion for New Trial is DENIED. IT IS FURTHER ORDERED that the Government's May 11, 2001 Motion to Strike Defendant's Appendix of Documents is DENIED. Finally, IT IS FURTHER ORDERED that Defendant's July 3, 2001 Motion to Convert Motion for New Trial to a Motion to Vacate Conviction is DENIED.

be viewed as ineffective legal representation that entitles Defendant to a retrial under a different strategy.

Next, regarding Defendant's claim of prosecutorial misconduct, the Court finds that this charge is not only lacking in merit, but reflects a reckless disregard for the record. Defendant contends that the Government had an obligation to update its January 21, 2000 Supplemental Bill of Particulars upon learning that certain of its allegations purportedly lacked evidentiary support. Specifically, while this document identifies certain drug transactions as having occurred in 1993 and 1994, the relevant Government witness indicated, in a subsequent interview and in his testimony at trial, that he could no longer recall the precise dates when these transactions occurred. Yet, even assuming that this witness could be viewed as "recanting" the statements upon which the Government relied in its Supplemental Bill of Particulars—a dubious proposition, where the purported "retractions" seized upon by Defendant are statements (i) that the witness had purchased cocaine from Defendant "dating back to 1993," and (ii) that he had purchased cocaine from Defendant "several times after that"—it is simply incorrect, and indeed irresponsible, to charge the Assistant U.S. Attorney with "hiding the ball" on this issue, where it is undisputed that the Government provided Defendant's trial counsel with a "DEA–6" investigative report of the witness interview in question on September 7, 2000, several months before trial. Simply stated, if there were any inconsistencies in the Government's case, Defendant and his counsel were provided with all of the information necessary to identify and exploit any such purported weaknesses. Further, to the extent that Defendant asserts that the Government's alleged "misrepresentation" of the evidence in the Supplemental Bill of Particulars caused him not to pursue a statute of limitations defense, the Court finds this claim to be wholly without merit, for at least two reasons. First, as noted above, the lynchpin of the statute of limitations defense is an affirmative act of withdrawal, and Defendant is uniquely situated, and surely need not look to the Government, to bring forward evidence of such action on his part. Second, whether the drug transactions in question occurred in 1993 or 1994, they nonetheless came *after* the sole act of "withdrawal" identified by Defendant, his statement to the FBI in June of 1992, thereby negating any such prior withdrawal from the charged conspiracy.