RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0388P (6th Cir.)
File Name: 01a0388p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

LARRY GIBSON,
  *Petitioner-Appellant,*

   *v.*       No. 99-6382

UNITED STATES OF AMERICA,
  *Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 96-00050—Jennifer B. Coffman, District Judge.

Argued: June 12, 2001

Decided and Filed: November 6, 2001

Before: RYAN and COLE, Circuit Judges; MARBLEY,
District Judge.*

---

## COUNSEL

**ARGUED:** Kevin M. Schad, SCHAD & COOK, Cincinnati, Ohio, for Appellant. James E. Arehart, ASSISTANT UNITED STATES ATTORNEY, Lexington, Kentucky, for

---

* The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

Appellee. **ON BRIEF:** Kevin M. Schad, SCHAD & COOK, Cincinnati, Ohio, for Appellant. James E. Arehart, Charles P. Wisdom, Jr., ASSISTANT UNITED STATES ATTORNEYS, Lexington, Kentucky, for Appellee.

————————————

## OPINION

————————————

ALGENON L. MARBLEY, District Judge.  Defendant-Appellant Larry Gibson ("Gibson") appeals from his conviction of one count of manufacturing marijuana and one count of possession of marijuana with intent to distribute, both in violation of 21 U.S.C. § 841(a)(1), and from the sentence he received pursuant thereto.  Gibson assigns error to:  (1) the district court's admission into evidence of an inculpatory statement allegedly made by Gibson's co-defendant, Edwin W. Sellers ("Sellers"); (2) the court's determination that Gibson was subject to a mandatory minimum sentence; (3) a comment by the district judge that Gibson claims coerced a hasty verdict; (4) the court's application of a two-level sentence enhancement, pursuant to U.S.S.G. § 3C1.1; and (5) the alleged violation by government witnesses of the court's sequestration order.  For the following reasons, the Court AFFIRMS Gibson's conviction, but VACATES his sentence and REMANDS to the district court for resentencing in light of *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

## I.  BACKGROUND

### A.  Procedural History

Gibson, along with co-defendant Sellers, was indicted on August 22, 1996 on one count of manufacturing marijuana, pursuant to 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (aiding and abetting), and one count of possession of marijuana with intent to distribute, pursuant to 21 U.S.C. § 841(a)(1) and 18

U.S.C. § 2.[1]   Gibson was convicted of both counts on October 23, 1996.  On February 7, 1997, a final judgment was entered and Gibson was sentenced to 120 months incarceration.  No notice of appeal from this order was filed.

On July 28, 1997, Gibson, proceeding *pro se*, filed a motion pursuant to 28 U.S.C. § 2255.  On January 12, 1998, the district court allowed the withdrawal of the *pro se* motion without prejudice to Gibson.  On February 27, 1998, Gibson, with the assistance of counsel, filed a Motion for Vacation of Conviction and Sentence Pursuant to 28 U.S.C. § 2255.  In ruling on the February 27 motion, the court adopted the report and recommendation of the magistrate judge, and found that Gibson's counsel, who knew Gibson wished to challenge his conviction and sentence, had been ineffective for failing to file a direct appeal.  The court did not address the merits of Gibson's other arguments, but did, on September 29, 1999, vacate the February 7, 1997 judgment and enter an amended judgment identical to the original judgment, which had the effect of allowing Gibson to file a direct appeal.  On October 5, 1999, Gibson filed a timely notice of appeal.

## B.  Factual Background

On May 9, 1996, Detective Johnny Creech, then assigned to the governor's marijuana task force, and Captain Jeremy Shoop, of the National Guard, discovered marijuana plants growing in seed beds in Pulaski County, Kentucky.  The seed beds, which were located in two separate plots, were being cultivated in containers, which were covered with wire mesh. Near the seed beds, the officers found a mattock, mothball boxes, black plastic bags of potting soil, and five-gallon buckets of water.  At that time, there were no mothballs loose on the ground.  After surveying the scene, the officers hid themselves in the surrounding undergrowth and settled in for a stakeout.

---

[1]A forfeiture count, pursuant to 21 U.S.C. § 853, was also included in the indictment, but was later dismissed on motion by the government.

Shortly before seven o'clock in the evening, Creech heard a vehicle drive up and stop on a nearby dirt road. It was later ascertained that the vehicle was a truck belonging to Gibson. The marijuana seed beds were not visible from the road, nor was the faint path that led to the seed beds. The officers set up two video cameras and videotaped the approaching individuals, Gibson and Sellers. Gibson was videotaped dusting the marijuana plants with pesticide and throwing mothballs around the seed beds. Gibson and Sellers were arrested at approximately 7:20 p.m. After the arrest, the officers found that mothballs, identical to the mothballs found in Gibson's truck, had been spread around the seed beds. Fertilizer and cultivation tools were also found in Gibson's truck.

At trial, Gibson testified that he thought the plants and cages were some kind of animal food planted by the government, or that they were turkey-hunting paraphernalia. Gibson admitted that he sprinkled pesticide dust on each of the two separate plots, but claimed that he was sprinkling the pesticide on the plants because he thought it was poison and was concerned that animals would eat it were it left where he found it.

After both Gibson and Sellers were arrested, Sellers allegedly told Trooper Timothy Moore, "Both of us have medical problems and Tecumseh has no retirement. We thought we would grow this one patch for our retirement." Prior to opening statements at trial, both defendants moved to exclude this statement. The district court excluded the statement from the government's case-in-chief because it was produced very late in discovery. At that time, the district court admonished the defendants that the possible use of the statement for impeachment purposes would be revisited were Sellers to testify. Prior to Sellers's testimony, the district court specifically held that the statement could be introduced for impeachment purposes. At that time, Gibson's counsel conceded that, were Sellers to testify, the introduction of the statement for impeachment purposes would not amount to a violation of *Bruton v. United States*, 391 U.S. 123 (1968). On

*Olano*, 507 U.S. at 734. In Gibson's case, the evidence of his guilt was overwhelming: he drove his truck to an uninhabited forest with which he was obviously familiar; he stopped on a dirt road and walked directly to a marijuana nursery not visible from the road; he was recorded on videotape sprinkling Miracle Grow on the seedlings and spreading mothballs around the plots; the cultivation tools and chemicals in his truck matched those already present at the site. Given such a bulletproof case for the prosecution, it seems that no matter how badly Detective Creech or anyone else "goofed up" on the stand, the jury's guilty verdict was inevitable. In sum, the statement allegedly made by Creech cannot reasonably be said to have affected any of Gibson's "substantial rights."

Thus, this Court holds that Gibson is not entitled to a new trial or any other remedy on account of the alleged violations of the district court's sequestration order by government witnesses.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM Gibson's conviction, but VACATE his sentence and REMAND to the district court for resentencing in light of *Apprendi*.

affidavits of Gibson's father and Sellers's wife, it is likely Gibson has failed to clear this hurdle. The only specific, non-conclusory allegation made by the two affiants is that, following his initial testimony, Detective Creech said to other officers something to the effect of, "those two sons of bitches are going to get off because I goofed up." This statement neither conveys any trial testimony made by Creech nor suggests any testimony to be given by the other witnesses. Thus, we find the statement to be no more than a mere technical violation of the district court's sequestration order.

The Supreme Court has explained that the "second limitation on appellate authority under Rule 52(b) is that the error be 'plain.' 'Plain' is synonymous with 'clear' or, equivalently, 'obvious.'" *United States v. Olano*, 507 U.S. 725, 734 (1993). Generally, in order for an error to be "plain," the rule that has been violated must be clear—at least at the time of review—and its infraction obvious. *See id.*; *United States v. Frady*, 456 U.S. 152, 163 (1982) (explaining that "recourse may be had to the [plain error rule] only on appeal from a trial infected with error so 'plain' the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it"). In the case of a sequestration violation, however, requiring that the infraction itself be obvious sets the bar too high: due to the scheming, secretive nature of the "error," it is quite possible that a trial could be fatally infected even while the trial judge and prosecutor are none the wiser. With respect to an alleged sequestration violation, then, only the rule need be obvious for any infraction committed to be "plain." As it is beyond responsible debate that, particularly when a sequestration order is in place, witnesses are not supposed to discuss their testimony with other witnesses, this Court finds that any violation here would be plain.

The third limitation on appellate authority under Rule 52(b) is that the plain error must "affec[t] substantial rights." FED. R. CRIM. P. 52(b). This requirement "in most cases . . . means that the error must have been prejudicial: It must have affected the outcome of the district court proceedings."

the stand, on cross-examination, Sellers denied ever making the statement. The court then ruled, over Gibson's objection, that the government would be allowed to use Trooper Moore as a rebuttal witness to impeach Sellers. Moore testified that Sellers had told him, "Both of us have medical problems and Tecumseh has no retirement. We thought we would grow this one patch for our retirement." At no point did Gibson move for a severance.

With respect to the alleged statement, the court instructed the jury:

There has been evidence that the defendant Sellers made a statement about the case prior to trial. You may use that evidence, if you believe that evidence, however, only to help you decide if the defendant Sellers said something different earlier and if what the defendant Sellers said here in court was true. You must not, however, consider what was said earlier as any proof or evidence of the guilt of the defendant Sellers for the crimes charged in the Indictment. Additionally, you may not consider or even discuss that statement in any way when you are deciding if the government has proven its case against defendant Gibson.

The indictment on which Gibson was brought to trial charged that the seed beds contained a total of "approximately 2,661 marijuana plants." The government also adduced testimony at trial that generally supported that number of plants.[2] Jury instruction number twelve contained the full text of both counts of the indictment, including the reference to "approximately 2,661 marijuana plants." Jury instruction number thirteen, which provided the legal standard for the jury to apply with respect to the manufacturing charge, made no mention of a specific number of plants, instead discussing "a number of plants of marijuana," and did not

---

[2]Drug chemist John Harris testified: "There were actually – I estimated somewhere over 2,000 plants; I think the count from the investigating officer listed 2,661 plants."

require the jury to make a finding with respect to that number. Jury instruction number fourteen, which provided the legal standard for the jury to apply with respect to the possession with intent to distribute charge, made no mention of a specific number of plants, instead discussing "a quantity of marijuana," and did not require the jury to make a finding with respect to the number of marijuana plants possessed. Jury instruction number twenty provided:

In the Indictment, it is alleged that a particular amount or quantity of marijuana was involved. In order for you to find the defendants guilty of this charge, the evidence in the case need not establish that the exact amount or quantity of marijuana was as alleged in the [I]ndictment, but only that any amount or quantity of marijuana was, in fact, the subject of the acts charged in the Indictment.

After the close of evidence, at approximately 4:15 p.m. on October 23, 1996, the court designated Donna Griffeth, juror number seventy-eight, as the alternate juror and excused her. The court did so because Griffeth had child care responsibilities that required her to leave by 4:30 p.m. In excusing Griffeth, the court stated:

I'm designating you as the alternate juror. You will be excused. This jury is going to be deliberating this afternoon and it appears that you won't be able to do that. And unfortunately I don't have the physical space to let the jury deliberate tomorrow. I have another jury coming in and the grand jury coming in.

Gibson did not object to this comment. Jury instructions concluded at 7:09 p.m., and the jury returned its verdict, finding Gibson guilty on both counts, at 8:24 p.m.

On February 7, 1997, the district court sentenced Gibson to 120 months incarceration on each of the two counts, to be served concurrently. The court, explicitly adopting the factual findings and the guideline applications of the pre-sentence investigation report, determined Gibson's total offense level to be twenty-eight, and his criminal history category to be

As for the third step in the § 3C1.1 review process, after the district court made a finding of obstruction of justice, it was required to apply the enhancement. *McDonald*, 165 F.3d at 1035. It properly did so.

The district court's two-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1 is therefore AFFIRMED.

### E. Violation of Sequestration Order Claim

Gibson asserts that several of the government's witnesses violated the district court's sequestration order at trial, entitling him, at the very least, to an evidentiary hearing on the issue. Gibson did not object at trial to the alleged infractions.

#### 1. Standard of Review

Since Gibson did not bring this matter to the district court's attention at trial,[9] our review is for plain error. FED. R. CRIM. P. 52(b); *United States v. Collins*, 78 F.3d 1021, 1033 (6th Cir. 1996).

#### 2. Analysis

As we noted earlier, the first prong of the plain error analytical framework requires that there be error. *Johnson*, 520 U.S. at 466-67. In this case, even fully crediting the

---

[9] We note that Gibson did raise this issue in his February 27, 1998 Motion for Vacation of Conviction and Sentence Pursuant to 28 U.S.C. § 2255. In response to that motion, the district court found that Gibson's counsel had been ineffective by filing neither an appeal nor an *Anders* brief despite having knowledge of Gibson's desire to appeal. Without addressing the merits of any of Gibson's other claims, including his claim that government witnesses violated the court's sequestration order, the district court vacated its judgment and entered an amended judgment identical to the original judgment, effectively providing Gibson the opportunity to file a direct appeal. Despite this interesting procedural history, the fact remains that Gibson did not bring the alleged sequestration violations to the attention of the district court at trial.

articulated as a three-step process.  *United States v. McDonald*, 165 F.3d 1032, 1034 (6th Cir. 1999).  First, the court's factual findings in relation to guidelines determinations are reviewed under a clearly erroneous standard.  *Id.* (citing *United States v. Latouf*, 132 F.3d 320, 331 (6th Cir. 1997)).  Second, "a district court's determination of whether the facts constitute an obstruction of justice is a mixed question of law and fact that is reviewed *de novo*."  *McDonald*, 165 F.3d at 1034 (citing *Razavi v. Comm'r of Internal Revenue*, 74 F.3d 125, 127 (6th Cir. 1996)); *United States v. Kushmaul*, 147 F.3d 498, 500 (6th Cir. 1998)).  Third, "once there has been a finding of obstruction of justice, the court must apply the enhancement . . . . Because the enhancement language of the guideline is mandatory rather than discretionary, such enhancement is reviewed under the *de novo* standard." *Id.*

### 2. Analysis

In this case, the district court found that Gibson lied under oath when he testified:  (1) he did not think the seedlings were marijuana; (2) he did not even know what marijuana looks like; (3) he was "throwing out" the pesticide when he sprinkled it on the marijuana; and (4) specifically, he was not growing marijuana.  Based upon the evidence before the district court, these factual findings do not bespeak clear error.

With respect to the second step in the § 3C1.1 evaluation process, this Court has previously observed: "The application notes to USSG § 3C1.1 provide examples of conduct to which that section does and does not apply." *McDonald*, 165 F.3d at 1035.  According to application note 4(b), an enhancement for obstruction of justice should be applied if the court finds the defendant has "committ[ed], suborn[ed], or attempt[ed] to suborn perjury." U.S.S.G. § 3C1.1, note 4(b).  As the district court's factual findings necessarily lead to the conclusion that Gibson committed perjury, this Court finds that, for the purposes of § 3C1.1, he obstructed justice.

one.  The court found that "based upon the . . . appropriate offense level and the criminal history category, the guideline range would be 78 to 97 months.  However, the statutory minimum is 10 years, and because that exceeds the guideline range, I have to impose the statutory minimum here."  The court found applicable 21 U.S.C. § 841(b)(1)(A), which provides that the manufacture, or the possession with intent to distribute, of "1,000 or more marijuana plants regardless of weight" requires a sentence of "a term of imprisonment which may not be less than 10 years . . . ."    21 U.S.C. § 841(b)(1)(A).

Gibson's total offense level was calculated at twenty-eight instead of twenty-six because the court applied a two-level enhancement for obstruction of justice, pursuant to U.S.S.G. § 3C1.1.  The court explained:

Mr. Gibson's testimony was . . . that he had seen a turkey in this area the year before and on this particular occasion he saw some turkey scratching and followed that; that he saw a couple of cages and thought that was either something the government was planting or something for a turkey hunt.  He thought it was the government, and he did not think it would be marijuana.  He says, I don't even know what marijuana looks like.  It didn't look like what he had seen on television or on T-shirts.  He also said he saw some chemicals and he dumped that out.  And he said he picked up some powder and started to throw it all out.  And then he said he just picked it up and sort of threw it in.  And he then denied that he was growing marijuana.

The Court discounts all of that testimony.  I believe that none of this was true, and that it amounted to perjury, and therefore that there was an obstruction of justice.  So on that basis, I'm going to enhance by two levels.

Gibson objected to the enhancement.

Attached to Gibson's Motion for Vacation of Conviction and Sentence Pursuant to 28 U.S.C. § 2255 were two affidavits intended to support Gibson's assertion that government witnesses violated the district court's sequestration order. Charley Gibson, Gibson's father, stated in his affidavit that "during trial [he] observed all of the several law officers involved in the case discussing their testimony in a stairwell," and that he "overheard Officer Creech state to the other officers that 'those two sons of bitches are gonna get off because I goofed up.'" Mary Faith Sellers, Sellers's wife, stated in her affidavit:

> After each [officer] would go into [sic] testify, they would all get in a corner and talk about how they messed up or what they said wrong and make sure the next witness didn't mess up. Officer Creech really messed up on his testimony[;] they took him in the hall stairway and drilled him on what to say[;] and then he was recalled. When he came out [after] the first time he testified[,] his exact words were[,] "I really messed up[;] those two son[s] of bitches are going to get off because I goofed up."

Gibson did not object to the alleged violation of the district judge's sequestration order at trial.

## II. DISCUSSION

### A. *Bruton* Claim

Gibson argues that the district court committed reversible error when it allowed the prosecutor to ask Sellers if Sellers had stated to Trooper Moore, "Both of us have medical problems and Tecumseh has no retirement. We thought we would grow this one patch for our retirement," and then allowed Trooper Moore to testify as a rebuttal witness to impeach Sellers's denial of the statement. Gibson assigns error both to the introduction of the evidence and to the district court's decision not to sever Gibson's trial from Sellers's in light of the evidence. At trial, Gibson did not object to the government's questioning of Sellers with respect

individual juror at the time she was being excused as the alternate juror. Second, the statement was made just after the close of evidence, almost three hours before the jury left to deliberate.[7] Third, in contrast to the comment challenged in *Markey*, the statement itself was ambiguous: it left open the possibility not only that the jury would have to deliberate without a break until it reached a verdict, but also that it would have to come back in two days' time to continue deliberating were it to fail to reach a verdict that evening. Given the totality of the circumstances surrounding the district court's comment to Juror Griffeth, this Court cannot find that the statement amounted to plain error.[8]

We therefore hold that the district court did not commit plain error when it made the challenged comment.

### D. Obstruction of Justice Enhancement Claim

Gibson contends that the district court failed to make the specific findings necessary to uphold a sentence enhancement under U.S.S.G. § 3C1.1. Gibson objected to the enhancement at trial.

#### 1. Standard of Review

The standard of review to be utilized when evaluating a district court's application of U.S.S.G. § 3C1.1 is best

---

[7] The trial judge was acting within her discretion when she sent the jury away to deliberate at 7:09 p.m. *See United States v. Burton*, 894 F.2d 188, 191-92 (6th Cir. 1988) (holding that there was "no basis for reversing the jury verdict where deliberations continued until 1:50 a.m. The judge was clearly acting within his discretion by allowing them to continue where they appeared to be making progress and there were no complaints of weariness.").

[8] Furthermore, even if we were to conclude that the district judge's statement amounted to plain error, it is inconceivable that the statement "affect[ed] substantial rights" of Gibson, as required by Rule 52(b) for this Court to notice the error. FED. R. CRIM. P. 52(b); *see* discussion *infra* Part II.E.2.

I'm designating you as the alternate juror. You will be excused. This jury is going to be deliberating this afternoon and it appears that you won't be able to do that. And unfortunately I don't have the physical space to let the jury deliberate tomorrow. I have another jury coming in and the grand jury coming in.

Gibson made no objection to this statement.

### 1. Standard of Review

As Gibson did not object to the district court's comment at trial, this Court's review is for plain error. FED. R. CRIM. P. 52(b); *United States v. Collins*, 78 F.3d 1021, 1033 (6th Cir. 1996).

### 2. Analysis

In evaluating for coercive effect a judge's statement to the jury, this Court must consider the statement in context, assessing it under the totality of the circumstances. *See Jenkins v. United States*, 380 U.S. 445, 446 (1965).

The case presently before the Court is reminiscent of *United States v. Markey*, 693 F.2d 594 (6th Cir. 1982). In that case, which was also reviewed for plain error, the district judge had commented "at the conclusion of trial, that the courthouse would be available the following morning (Christmas Eve) if the jury was unable to reach a consensus that afternoon." *Id.* at 597. Despite the implication that the *Markey* jury had either to reach a verdict that day or return to deliberate on December 24, this Court found that the district judge's remarks to the jury did not amount to plain error because they were unlikely "to give the jury the impression that it was more important to be quick than to be thoughtful." *Id.* (quotation omitted).

In this case, there are several factors tending to undermine Gibson's argument that the district judge's statement was coercive in nature. First, the statement was made not in the context of charging the jury, but rather was directed to one

to the retirement statement, but did object to Trooper Moore being allowed as a rebuttal witness. Gibson did not make a motion to sever at trial.

### 1. Standards of Review

A district court's decision regarding the admission of evidence is reviewed for abuse of discretion. *United States v. Denton*, 246 F.3d 784, 788 (6th Cir. 2001); *United States v. Bonds*, 12 F.3d 540, 554 (6th Cir. 1993) (citing *Mitroff v. Xomox Corp.*, 797 F.2d 271, 275 (6th Cir. 1986)). "Even if the trial court abuses its discretion, a new trial is not required unless 'substantial rights' of a party are affected." *Bonds*, 12 F.3d at 554 (citing FED. R. CRIM. P. 52(a); *Rye v. Black & Decker Mfg. Co.*, 889 F.2d 100, 103 (6th Cir. 1989)). That is, "an abuse of discretion that does not affect substantial rights is harmless error and is to be disregarded." *Id.* (citing FED. R. CRIM. P. 52(a)).

To the extent Gibson now argues that, despite not making a motion for such relief below, his trial should have been severed from Sellers's, this Court's review is for plain error. FED. R. CRIM. P. 52(b); *United States v. Collins*, 78 F.3d 1021, 1033 (6th Cir. 1996). This Court has defined "plain error" as "'an egregious error, one that directly leads to a miscarriage of justice.'" *United States v. Frazier*, 936 F.2d 262, 266 (6th Cir. 1991) (quoting *United States v. Busacca*, 863 F.2d 433, 435 (6th Cir. 1988)). The Supreme Court has noted:

before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affect[s] substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.

*Johnson v. United States*, 520 U.S. 461, 466-67 (1997) (citations and quotations omitted). For purposes of plain error review, we apply the law as it exists at the time of review.

*United States v. Calloway*, 116 F.3d 1129, 1136 (6th Cir. 1997) (citing *Johnson*, 520 U.S. at 468).

## 2. Analysis

In *Bruton v. United States*, 391 U.S. 123 (1968), the Supreme Court held that a defendant's Sixth Amendment right to confront his accusers is infringed upon when an extrajudicial confession made by a *non-testifying* co-defendant, which directly incriminates the defendant, is introduced at trial. *Id.* at 135-37. Fundamental to this holding is the reality that a non-testifying co-defendant is not available for cross-examination by the aggrieved defendant. *See id.* at 135-36. *Gray v. Maryland*, 523 U.S. 185 (1998), the only case cited by Gibson in support of his *Bruton* claim, also involved an out-of-court confession of a *non-testifying* co-defendant,[3] *id.* at 188-89, and also suggested that such a violation could arise only when the implicated defendant did not have the opportunity to cross-examine the confessing co-defendant. *See id.* at 194. That is, where the co-defendant testifies, and so is available for cross-examination by the aggrieved defendant, there is no possibility of a Sixth Amendment *Bruton* violation.

In the matter *sub judice*, Sellers took the stand and was available for cross-examination by Gibson. Thus, Gibson's Sixth Amendment right to confront his accusers was not compromised when the government asked Sellers about the retirement statement on cross-examination. Nor did the district court err when it allowed the government to complete its impeachment of Sellers by calling a rebuttal witness to testify as to the retirement statement. Like Sellers, Trooper Moore was obviously available to Gibson for cross-examination, and thus Gibson's Sixth Amendment rights were not infringed upon by Moore's testimony.

---

[3] It is worth noting that in *Gray*, the trial judge denied the defendant's motion for a separate trial. *Gray*, 523 U.S. at 188.

been proper under § 841(b)(1)(D).[6] Under *Ramirez*, this is *Apprendi* error.

In this case, we find that it was constitutional error for the district court to sentence Gibson as if he had been convicted of manufacturing and possessing with intent to distribute more than 1,000 marijuana plants when the jury had made no finding as to the number of plants in question. Instead, the jury had only convicted Gibson of manufacturing "a number of plants of marijuana" and possessing with intent to distribute "a quantity of marijuana." As in *Page*, we find that Gibson's "substantial rights were affected and the fairness of the proceedings was undermined since the error clearly affected the outcome of the case by substantially increasing his sentence." *Page*, 232 F.3d at 545. We therefore VACATE Gibson's sentence and REMAND to the district court for resentencing in light of *Apprendi*.

## C. Jury Coercion Claim

Gibson claims that the district court coerced a hasty verdict from the jury when, after the close of evidence, at approximately 4:15 p.m. on October 23, 1996, it, in the context of excusing juror Donna Griffeth, stated:

---

[6] The district court determined Gibson's total offense level to be twenty-eight, and his criminal history category to be one. The court found that "based upon the . . . appropriate offense level and the criminal history category, the guideline range would be 78 to 97 months." Sentencing Guideline section 5G1.2(d) provides:

> If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law.

U.S.S.G. § 5G1.2(d). Thus, Gibson should have been sentenced to sixty months incarceration on each count of which he was convicted, with eighteen to thirty-seven months of the second count to run consecutively, the rest running concurrently.

In the matter *sub judice*, in light of jury instructions thirteen, fourteen and twenty, *see supra* Part I.B, it is apparent that the jury made no finding as to the number of plants being grown by Gibson. Furthermore, the district court unambiguously imposed Gibson's ten-year sentence pursuant to the mandatory minimum—triggered by the court's determination that Gibson possessed "1,000 or more marijuana plants regardless of weight"—it believed was required by 21 U.S.C. § 841(b)(1)(A)(vii). With no finding by the jury as to the number of plants he was growing, Gibson should have been sentenced under 21 U.S.C. § 841(b)(1)(D). *See Ramirez*, 242 F.3d at 352 n.2. Pursuant to § 841(b)(1)(D), Gibson would not have been subject to any mandatory minimum sentence, and he would have been subject to a statutory maximum of five years incarceration on each count of his conviction. 21 U.S.C. § 841(b)(1)(D). Thus, holding aside sentencing guidelines concerns, had the district court chosen to impose the statutory maximum under § 841(b)(1)(D) on each count of Gibson's conviction, and had the court chosen to run the sentences concurrently, Gibson could have been sentenced to the same ten years of incarceration he received when the court found that "the statutory minimum is 10 years, and . . . I have to impose the statutory minimum here." The point, though, is that the district court did not *choose* to do any such thing; rather, it believed it was compelled by 21 U.S.C. § 841(b)(1)(A)(vii) to impose upon Gibson a sentence that would not even have

---

As to the admission of the statement as impeachment evidence, this Court finds that the district court did not commit an abuse of discretion. On direct examination, Sellers testified that he was not growing the marijuana in question. His prior retirement statement to the contrary, therefore, was fair game on cross-examination. This Court also finds that the district court did not commit plain error when it did not *sua sponte* grant Gibson a severance. The first prong of the plain error analytical framework requires that there must be error. *Johnson*, 520 U.S. at 466-67. As the *Bruton* analysis above shows, in this case there was none.

This Court therefore holds that the district court neither abused its discretion in allowing the retirement statement to be used for impeachment purposes, nor committed plain error when it did not *sua sponte* sever Gibson's trial from Sellers's in light of the statement.

## B.  Mandatory Minimum Sentence Claim

Gibson argues that the district court erred in sentencing him to a ten-year mandatory minimum period of incarceration under 21 U.S.C. § 841(b)(1)(A).[4] The government, relying on *United States v. French*, 974 F.2d 687 (6th Cir. 1992), urges that we find Gibson to have waived the *Apprendi* challenge to his sentence because he failed to raise the issue at his sentencing—before *Apprendi* was decided—and did not brief the issue for this Court. In *French*, we held:

> Where the district court has offered the opportunity to object and a party is silent or fails to state the grounds for objection, objections to the sentence will be waived for

---

[4] Though Gibson's appellate brief focuses on the question of whether there was sufficient evidence to determine that the marijuana plants at issue were, legally, "plants," *Brief for Appellant* at 10-12, his Fed. R. App. P. 28(j) filing of May 10, 2001 notes his reliance on *Apprendi* and *United States v. Ramirez*, 242 F.3d 348 (6th Cir. 2001), in support of his challenge to the mandatory minimum sentence he received. Furthermore, Gibson's June 7, 2001 28(j) filing directed this Court's attention to *United States v. Strayhorn*, 250 F.3d 462 (6th Cir. 2001).

purposes of appeal, and this court will not entertain an appeal based upon such objections unless refusal to do so would result in manifest injustice.

*Id.* at 697.  The fundamental precept informing the Supreme Court's decision in *Apprendi* is that it is patently unjust for a defendant to be sentenced for a crime of which he has not been convicted.  *See Apprendi v. New Jersey*, 530 U.S. 466, 476-78 (2000).  Therefore, should this Court, applying the plain error standard of review, find that *Apprendi* has been violated in this case, it follows *a fortiori* that treating Gibson's objection to his sentence as waived would result in manifest injustice.  We thus decline to give Gibson's potentially meritorious *Apprendi* claim the short shrift the government urges.

### 1.  Standard of Review

Where, as here, there was no objection to a challenged determination in the district court, review is for plain error. Fed. R. Crim. P. 52(b); *United States v. Collins*, 78 F.3d 1021, 1033 (6th Cir. 1996).

### 2.  Analysis

In *Apprendi*, the Supreme Court admonished:  "It is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed." *Apprendi*, 530 U.S. at 490 (quoting *Jones v. United States*, 526 U.S. 227, 252-253 (1999) (Stevens, J., concurring)).  In *Ramirez*, this Court interpreted *Apprendi* to forbid the imposition of a mandatory minimum term of incarceration under 21 U.S.C. § 841(b)(1)(A) when the crucial quantity-of-drugs question had not been submitted to the jury.  *Ramirez*, 242 F.3d 348, 351-52 (explaining that "[a]ggravating factors, other than a prior conviction, that increase the penalty from a nonmandatory minimum sentence to a mandatory minimum sentence . . . are now elements of the crime to be charged and proved.").  Thus, "a defendant may not be exposed to a greater

punishment than that authorized by the jury's guilty verdict." *United States v. Page*, 232 F.3d 536, 543 (6th Cir. 2000).

In *Ramirez*, this Court vacated a twenty-year sentence imposed by the district court pursuant to the mandatory minimum provision of 21 U.S.C. § 841(b)(1)(A), finding that the defendant should have been sentenced under 21 U.S.C. § 841(b)(1)(C).  *Ramirez*, 242 F.3d at 352.  Under § 841(b)(1)(C), the maximum sentence to which a defendant may be exposed, provided that neither death nor serious bodily injury arises from the use of the substance involved, is twenty years.  21 U.S.C. § 841(b)(1)(C).  Implicit in the *Ramirez* Court's decision is the notion that *Apprendi* error occurs whenever a district court improperly sentences a defendant to a mandatory minimum term, even when the sentence handed down does not exceed the statutory maximum period of incarceration to which the jury's verdict exposed the defendant.  *See Ramirez*, 242 F.3d at 351-52; *see also United States v. Flowal*, 234 F.3d 932, 937 (6th Cir. 2000) (noting that, where the penalty imposed is mandatory under one sentencing provision but not under another, the "difference is significant . . . because the trial judge's determination of the weight of the drugs took away any discretion in terms of imposing a shorter sentence.").  We made this rule explicit in *United States v. Strayhorn*, 250 F.3d 462, 470 (6th Cir. 2001), where we found *Apprendi* error in a guilty plea case and held that "[i]t matters not . . . that the statutory maximum for § 841(b)(1)(D) is equivalent to the statutory mandatory minimum for § 841(b)(1)(B)."[5]

---

[5]In that case, defendant-appellant Shannon Strayhorn pleaded guilty to possession with intent to distribute "a measurable quantity of marijuana," accepting responsibility for eighty-eight pounds of the drug, but specifically refusing to accept responsibility for any more.  *Id.* at 464-65.  He reserved the right to challenge the amount of marijuana attributable to him in his oral plea agreement.  *Id.* at 464.  The district court attributed to Strayhorn 414 pounds of marijuana, and sentenced him to a mandatory minimum sentence of ten years pursuant to 21 U.S.C. § 841(b)(1)(B)(vii).  *Id.* at 465-66.  Finding *Apprendi* error, we vacated Strayhorn's sentence and remanded for resentencing.  *Id.* at 467-71.