**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Anthony MAZZIO, Defendant–
Appellant.**

**No. 00–1244, 01–1699.**

United States Court of Appeals,
Sixth Circuit.

Sept. 27, 2002.

Before SUHRHEINRICH and BATCHELDER, Circuit Judges; LITTLE, District Judge.*

PER CURIAM.

Defendant–Appellant Anthony Mazzio appeals from the judgment entered on February 29, 2000 in the United States District Court for the Eastern District of Michigan, of conviction and sentence of 240 months, imposed on two counts relating to the possession of cocaine, in violation of 21 U.S.C. §§ 841 and 846; and from the trial court's denial of his motion for a new trial.

Mazzio raises three assignments of error. First, he claims the district court judge abused its discretion by refusing to grant his motions for a new trial based on newly discovered evidence. Second, he claims the judge committed plain error, in violation of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), in imposing his sentence based on

* The Honorable F.A. Little, Jr., United States District Judge for the Western District of Lou-    isiana, sitting by designation.

an amount of drugs not charged in the indictment and proved to a jury beyond a reasonable doubt. Finally, he claims the statutes he was convicted under, 21 U.S.C. §§ 841 and 846 are facially unconstitutional.

We find Mazzio's contentions without merit for the following reasons. First, the judge did not abuse his discretion in denying Mazzio's motion for a new trial because the evidence proffered by Mazzio was neither newly discovered, exculpatory, nor material. Second, the judge did not commit plain error at sentencing under *Apprendi* because the sentence did not exceed the statutory maximum, and alternatively, although not proved to a jury beyond a reasonable doubt, the amount of drugs was otherwise shown by "overwhelming and essentially uncontroverted" evidence. Finally, §§ 841 and 846 are not facially unconstitutional because there exist circumstances where the statutes, as written, can comply with the requirements of *Apprendi* and the Constitution. Accordingly, we affirm the decision of the district court on all issues.

## I.

On April 29, 1999, a multi-jurisdictional drug interdiction task force, including members of the Wayne County, Michigan Sheriff's Department ("Task Force"), received a tip that an individual staying at the Hilton Suites near the Detroit Metropolitan Airport was possibly involved in narcotics. The only clue the Task Force had to the man's identity is that he was a resident of Illinois. Deputy Tyrone Jackson of the Wayne County Sheriff's Department proceeded to the area of the hotel and observed two vehicles in the hotel

parking lot with Illinois plates. One of the vehicles, a green Dodge Intrepid, was registered to an Illinois man, Rogelio "Roger" Agguire, who had two previous drug arrests in Illinois, as well as an outstanding bench warrant for drug activity in Wayne County. Deputy Jackson learned that, instead of Agguire, another Illinois man, Timothy Coop, Jr., had registered at the hotel with Agguire's car, in Room 439. The task force set up surveillance.

Task Force members waited and eventually observed an unknown man knock on the door of Room 439. This man, later identified as Darrel Steel, subsequently left the hotel with the man identified as Coop. Steel drove an Oldsmobile Alero, while Coop followed in the Intrepid. Coop and Steel drove to a location in Romulus, Michigan, where the two engaged in what may have been drug activity.[1] Subsequently, Coop left the location and returned to the hotel alone in the Intrepid. Shortly thereafter, the Intrepid left the hotel again, this time followed by a white Grand Am. This time, the Intrepid was driven not by Coop, but by a man later identified as Appellant Anthony Mazzio. The Grand Am was driven by a female, later identified as Alicia Harrington. The Intrepid and the Grand Am drove north on the Southfield Expressway into Dearborn.

Members of the Task Force, wishing to know the identity of the driver, requested that a Dearborn police unit find a reason to stop the Intrepid. Dearborn Police Officer Michael Ball observed the Intrepid, driven by Mazzio, following too closely behind the car in front of it. With some difficulty, Officer Ball initiated a traffic stop on the Intrepid.[2] Mazzio produced

---

**1.** Members of the task force watched the Intrepid disappear toward the back of the house and into the garage. Based on this suspicious

activity, the police believed a drug deal might have taken place.

**2.** Apparently, the woman driving the Grand Am, Alicia Harrington, sped up close behind

his driver's license but failed to produce any papers for the vehicle, claiming the car was not his, but instead belonged to a friend of his named Roger, whose last name Mazzio did not know. Mazzio claimed he had borrowed Roger's car to go to the Fairlane Mall, apparently unaware the vehicle had been under observation for some time.

Officer Ball cited Mazzio for following too closely and requested Mazzio's consent to search the vehicle. Mazzio consented to the search, including the participation of a canine unit. The dog sniff led to the discovery of approximately ten kilograms of cocaine hidden in a secret compartment beneath the back seat of the car. Ball arrested Mazzio and administered the *Miranda* warnings. Officers seized two cellular phones from the scene, one on Mazzio's person, the other in the backseat of the Intrepid. After learning that narcotics had been discovered in the Intrepid, Deputy Jackson and his partner returned to the hotel and arrested Coop. In Coop's hotel room, police discovered a hand-written map with directions from Chicago to Detroit as well as a hand-written pager number and a hand-written cellular phone number (hereafter collectively known as "the contact numbers").

At trial, Coop testified against Mazzio. In exchange, the government offered Coop a reduced sentence from his statutorily imposed minimum sentence of 120 months to approximately 40 months.[3] Coop alleged that on two occasions, within the span of five days, he was hired by a man in Chicago named Ricardo, and paid $1500 to make a drug run to Detroit. Both times, Coop followed the same routine. He drove the same green Intrepid to a hotel near the Detroit Metropolitan Airport.[4] Coop then called the pager number written on the map, and both times a man known to him as "D", and later identified as Steel, arrived a short time later. Coop, in the Intrepid, drove behind "D" to the residence in Romulus, where Coop handed the keys to "D." "D" took the keys and drove the Intrepid into the garage and closed the door behind him. A short time later "D" returned the Intrepid and the keys to Coop. Coop then drove the Intrepid back to the hotel, where he again called the contact number. Mazzio arrived a short time later, and Coop handed him the keys. The first time, Mazzio returned a while later and handed the keys and the car over to Coop. The second time was when Mazzio and Coop were arrested.

The officers were in possession of the telephone records associated with the two cellular phones found on or near Mazzio at the time of his arrest. The records indicated both cell phones were registered to a Stacey Hunter, and both had been used to call obvious transpositions of the contact numbers several times.[5] At trial, the par-

---

the Intrepid in an apparent attempt to prevent Officer Ball from pulling behind the Intrepid and pulling it over. Ball instead pulled alongside the Intrepid and motioned Mazzio to pull to the side. Mazzio complied with Ball's request and pulled over.

**3.** Coop was also charged under 21 U.S.C. § 841 and § 846. Under § 841(b)(1)(A), the mandatory minimum sentence for a conviction under these subsections is ten years in prison (120 months).

**4.** Coop stated that during the first run, he stayed at the Crowne Plaza, and during this, the second run, he stayed at the Hilton.

**5.** By "transpositions," we mean that the last four digits of the contact numbers were reversed. For example, the pager number, as listed on the map, was 888–375–4983. According to the cell phone records, both phones had been used to dial 888–375–8349, indicating that the numbers written on the map were encrypted, so that someone not involved in the scheme would not be able to determine the true contact number, and

ties stipulated Stacey Hunter had supplied Mazzio with both cell phones. Coop indicated that the contact numbers were the numbers which he used to contact the Chicago supplier, Ricardo. This evidence regarding the cell phones apparently linked Mazzio to the Chicago supplier.

After hearing the testimony of Deputy Jackson, Officer Ball, and Timothy Coop; as well as viewing the phone records linking Mazzio to the contact numbers of the drug supplier in Chicago, the jury convicted Mazzio under 21 U.S.C. §§ 841 and 846, and he was sentenced to 240 months.

On October 6, 2000, Mazzio timely filed a motion for new trial pursuant to Federal Rule of Criminal Procedure 33, citing the existence of three pieces of new evidence. Mazzio subsequently amended the complaint to add a fourth. In an order dated April 27, 2001, the judge denied the motions on all claims. Mazzio timely filed a notice of appeal on May 7, 2001, and this matter is now properly before this Court.

## II. The Dismissal of Mazzio's Motion for a New Trial

Mazzio claims that the district court abused its discretion by denying his motion for a new trial. Mazzio sought a new trial based on newly discovered evidence. Motions for new trial based on newly discovered evidence are disfavored in this Circuit. A trial court's determination that a new trial is not warranted will not be reversed absent clear abuse of discretion. *U.S. v. O'Dell,* 805 F.2d 637, 640 (6th Cir. 1986).

A motion for a new trial based on newly discovered evidence must satisfy four criteria: the evidence (1) was discovered after trial, (2) could not have been discovered earlier with due diligence, (3) is material and not merely cumulative or impeaching, and (4) would likely produce an acquittal. *Id.* at 640. When a court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact," it has abused its discretion. *U.S. v. Turns,* 198 F.3d 584, 586 (6th Cir.2000).

■ On appeal, Mazzio claims three pieces of newly discovered evidence. First, he claims there was a statement made by Stacey Hunter, in which she informed FBI Agent Edward Wray that she had given Mazzio only one cell phone. Second, he claims there was prosecutorial misconduct in that the government was aware of this statement and failed to disclose it. Finally, he claims ineffectiveness of counsel for not interviewing Hunter and obtaining the statement. Mazzio claims the judge abused his discretion when he dismissed his motion for a new trial in light of this new evidence, yet it is unclear whether Mazzio believes the judge used the wrong legal standard, misapplied the correct legal standard, or relied on clearly erroneous findings of fact.

### A. Hunter's Statement as Newly Discovered Evidence

Mazzio's first claim for a new trial was addressed and dismissed by the district

would, accordingly, be led to believe these numbers were innocent numbers unrelated to a plan to sell drugs. As dialed, 888–375–4983 was not a pager at all, but a sex talk line. However, when transposed, 888–375–8349 was indeed a pager number, although PageNet, the service provider, was unable to determine to whom that number was registered as of the date in question. At trial, however, Coop indicated that these were the contact numbers Ricardo had given him, although Coop never referred to transpositions of the digits at trial. The same is true of the cell number on the map. At trial, FBI Agent Michael Garland testified that it is common for persons involved in drug trafficking to encrypt telephone numbers in this way, so as to confuse somebody trying to follow a trail. The judge accepted this testimony.

court judge. After trial, Hunter produced an unsigned, unsworn affidavit stating she had given Mazzio only one cell phone. Mazzio contends this statement refuting his ownership of one of the phones is newly discovered evidence that entitles him to a new trial. However, why Mazzio thinks this statement is important, or even relevant, is not entirely clear.

Mazzio has admitted owning one of the phones. The phone records indicate that both cell phones were used to call many of the same numbers, including transpositions of the contact numbers. This fact puts into question the materiality of the second phone and Hunter's statement.[6] There were at least a half dozen calls made to the contact numbers from the first phone. Hence, even if Mazzio did not own or even have possession of the second phone, the connection between himself and Ricardo is nonetheless established through the first. Evidence of whether Mazzio owned the second phone is therefore merely cumulative, and, accordingly, not material.

Mazzio challenges this reasoning, claiming only the second phone was inculpatory. Mazzio points out that only the second phone had dialed the contact numbers *exactly as written on the map*, and not transposed, a significant number of times. The jury heard the testimony of FBI Agent Michael Garland that transpositions of phone numbers are commonplace in drug dealing circles, and calls to the numbers as written were likely misdials by somebody forgetting to transpose the numbers. We find this reasoning sound. The numbers as transposed were dialed too frequently for any reasonable mind to presume a coincidence. The only evidence Mazzio provides that the numbers *as written* were

the real contact numbers, and the transposed numbers were innocent phone calls, is the testimony of Coop stating he had "called the numbers," without specifically referencing transpositions thereof. This vague statement by Coop does not lead to the conclusion that the numbers had not been transposed. Mazzio's counsel never directly inquired on cross examination whether Coop transposed the numbers. In light of the other evidence, we find that the judge did not err in finding that the real numbers of the contact, Ricardo, were transposed versions of the numbers written on the map. The transposed numbers, therefore, are the only numbers relevant to this case, and accordingly, Mazzio would not be exculpated by a finding that he did not own the second phone, in light of his ownership of the first.

Furthermore, even if we did find that only the second phone was inculpatory, it was found in Mazzio's possession at the time of his arrest. Mazzio has not provided a feasible explanation why the second phone was found in the Intrepid with him. Mazzio claims that Alicia Harrington owned the second phone, but Harrington was never in the Intrepid. The Intrepid was under surveillance long before Mazzio entered it, and calls were made to and from the second phone during the time of surveillance, indicating the phone was not sitting idly in the Intrepid. Coop testified, and all evidence suggests, that he was in Chicago prior to coming to Detroit. The phone records have shown this second phone in its local area (Detroit) at all times prior to Mazzio's arrest. Had it belonged to Coop, the phone records would have shown that any calls made from that phone within the several previous days were made from outside the service area. In-

---

6. For simplicity, we refer to the phone found on Mazzio's person—the one he admits owning—as the "first phone." We refer to the phone whose ownership is disputed—the one found in the back of the Intrepid—as the "second phone."

stead, the phone records show the phone was in service in the Detroit area and not with Coop in Chicago. Whether Stacey Hunter gave Mazzio that second phone is therefore immaterial, because he nonetheless had possession of it.

Even had Stacey Hunter's statement been material, it still would not have satisfied the requirements of the "newly discovered" evidence rule because it could have been discovered earlier through due diligence. Hunter was available to be interviewed by the defense, as well as the FBI or the prosecutor. Realistically, it is reasonable to assume Hunter would have been more available to the defense given her close connection with Mazzio.

### B. Prosecutorial Misconduct as Newly Discovered Evidence

■ Mazzio's second claim for a new trial is based on alleged prosecutorial misconduct in not disclosing Hunter's statement. Mazzio alleges the prosecutor was in possession of the statement during trial, yet misrepresented it to defense counsel and thereby fraudulently obtained a stipulation between the parties that Stacey Hunter had given Mazzio both phones. Mazzio relies on *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), claiming he was denied access to an exculpatory piece of evidence. If the prosecutor fails to turn over *Brady* material, Mazzio would be entitled to a lower standard in obtaining a new trial insofar as he is not required to show that the new evidence would have led to an acquittal. *U.S. v. Frost*, 125 F.3d 346, 382 (6th Cir.1997). However, material which is not wholly within the control of the prosecution is not *Brady* material. *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir.1999). Hunter was alive, available, and accessible by the defense as much as she was by the prosecution. Accordingly, any evidence involving the state-

ment made by Stacey Hunter fails to rise to the level of *Brady* material. Even if it did, a new trial would not be appropriate because this evidence could have been discovered earlier through due diligence and is immaterial for the reasons already mentioned.

### C. Ineffective Assistance of Counsel as Newly Discovered Evidence

■ Finally, Mazzio seeks a new trial based on newly discovered evidence that his counsel was ineffective. Mazzio claims that the failure of his attorney to interview and obtain a statement from Stacey Hunter constitutes ineffective assistance of counsel. Ineffective assistance of counsel claims are generally not heard on appeal, but saved for habeas review. Mazzio's attempt to introduce ineffective assistance of counsel as newly discovered evidence is a thinly veiled attempt to raise the issue with this Court.

Ineffective assistance of counsel cannot be newly discovered evidence where the facts supporting the ineffective assistance claim were within the defendants' knowledge at the time of trial. "[T]he evidence itself, not merely the legal implications of the evidence, [must] be newly discovered." *U.S. v. Seago*, 930 F.2d 482, 489 (6th Cir. 1991); *see also U.S. v. Riggins*, 208 F.3d 216 (6th Cir.2000). The statement itself does not qualify as "newly discovered evidence" because, as stated above, it is immaterial and could have been discovered earlier through due diligence. Therefore, failure of counsel to obtain the statement is likewise immaterial and, moreover, could have been discovered if Mazzio had simply asked his counsel whether Hunter had been interviewed. Furthermore, the judge heard testimony on the matter of ineffective assistance and was satisfied that counsel's strategy was plausible. Accordingly, we reject Mazzio's claim that the judge

abused his discretion in denying Mazzio's assertion of ineffective assistance of counsel as newly discovered evidence.

Even if we accept Mazzio's contentions on their face, Mazzio still has the onerous task of showing that not only was the district court wrong, but it had abused its discretion. He fails to do so because all Mazzio's assignments of error revolve around the statement made by Hunter. Even absent any analytical analysis, it is beyond reasonable to assume Mazzio should have been aware of how many phones he had been given without resorting to Hunter's statement for clarification. Any such statement, therefore, can hardly qualify as "newly discovered." Accordingly, for the foregoing reasons, we find the district court did not abuse its discretion and affirm the denial of Mazzio's motion for a new trial.

### III.

Mazzio further claims the judge erred in determining his sentence. Mazzio was sentenced to 240 months upon his conviction[7] —the minimum sentence under § 841 for prior felons found in possession of five or more kilograms of cocaine. Mazzio contends his sentence is in opposition to the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), because the quantity of cocaine was not provided in the indictment and never proved to the jury beyond a reasonable doubt. *Apprendi* provides that it is a violation of due process to remove from a jury any fact increasing the prescribed range of penalties to which a defendant is exposed. *Id.* at

469, 120 S.Ct. 2348. The judge determined the quantity of drugs by a preponderance of the evidence and sentenced Mazzio to a higher mandatory minimum sentence based on his finding.

Mazzio did not object to his sentence at trial. When a defendant fails to raise an objection to his sentence at trial, a reviewing court may still hear the issue based on the notions of fairness and proper adjudication. *Gibson v. U.S.*, 271 F.3d 247, 256 (6th Cir.2001). As with all alleged errors not raised at trial, Mazzio's *Apprendi* claims should be tested under the plain error test of Fed.R.Crim.P. 52(b), first described in *U.S. v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Where there is (1) an error that is (2) plain that (3) affects substantial rights, then an appellate court may correct an error not raised at trial, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Olano* at 734, 113 S.Ct. 1770.

The first question, then, is whether there is error. On its face, the *Apprendi* decision only applies to sentences imposed in excess of the statutory maximum, but this Court has extended *Apprendi* to enhancements of mandatory minimum sentences under § 841. *See U.S. v. Flowal*, 234 F.3d 932 (6th Cir.2000); *U.S. v. Ramirez*, 242 F.3d 348 (6th Cir.2001); *U.S. v. Strayhorn*, 250 F.3d 462 (6th Cir.2001). The government concedes that there is *Apprendi* error in this case, presumably based on our decisions in *Flowal* and its progeny. However, the Government's concession was made before the recently decided Supreme Court case of *Harris v.*

---

7. Mazzio was sentenced under 21 U.S.C. § 841(b). For a person with no prior felony drug convictions, the mandatory minimum sentence is ten years (120 months) for a violation of § 841(a). However, for a person who violates § 841(a) after a prior conviction for a felony drug offense, the mandatory minimum sentence is 20 years (240 months). Mazzio had been convicted of a felony drug offense in 1993. Hence, he was subject to the 240 month minimum for this conviction.

*U.S.,* —— U.S. ——, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002).

■ In *Harris,* the Supreme Court states that factors which increase the minimum sentencing range do not have to be proved to a jury beyond a reasonable doubt, and could in fact be determined by the judge at sentencing. Specifically, the defendant in *Harris* was sentenced for drug trafficking under 18 U.S.C. § 924(c)(1)(A). The statute provides a minimum sentence of five years if convicted under the statute, but it provides a minimum of seven years if it is determined that the defendant "brandished" a firearm while trafficking. The Court relied heavily on *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), which allowed to stand a minimum sentence enhanced due to a finding by the judge that the defendant had carried a weapon during a robbery. Although involving a violation of 18 U.S.C. § 924(c), and not 21 U.S.C. § 841, the decision in *Harris* leaves little doubt that *Ramirez, Flowal,* and *Strayhorn* are overruled to the extent they apply *Apprendi* to enhancements of mandatory minimum sentences. Accordingly, the Government's concession is moot and, under *Harris,* since the judge did not exceed the maximum sentence, there is no *Apprendi* error.

■ Notwithstanding *Harris,* this case can be disposed of on equal but alternate grounds. While *Harris* applies to the first prong of the plain error test—the existence of *Apprendi* error—the Supreme Court has also recently decided the case of *U.S. v. Cotton,*—U.S.—, —— U.S. ——, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002), which applies to the fourth prong of the test— whether the plain error substantially affects the fairness and integrity of the judicial proceedings. Since *Harris* and *Cotton* are equally dispositive of this case, we will continue to analyze the facts here under the plain error test as if the Government's concession had not been moot.

The second factor of the test is whether the error is plain. "[W]here the law at the time of trial was settled and clearly contrary to the law at the time of the appeal, it is enough that the error be plain at the time of appellate consideration." *Cotton,* —— U.S. at ——, 122 S.Ct. at 1785 (quoting *Johnson v. United States,* 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)). Here, *Apprendi* had not been decided at the time of Mazzio's trial. Accordingly, the law is different at the time of his appeal than it was at trial. The error is therefore plain.

The third and fourth prongs of the plain error test are closely related. In regard to the third prong—whether the plain error affected Defendant's substantial rights—the analysis is essentially irrelevant in light of the recent Supreme Court case of *U.S. v. Cotton,*[8] which clarified the

---

**8.** Mazzio would likely pass the third prong of the test. For the third prong of the test, we must determine whether the plain error affected Mazzio's substantial rights. Mazzio relies heavily on the case of *U.S. v. Page,* 232 F.3d 536 (6th Cir.2000). This Court in *Page* matter of factly stated that imposing additional years of imprisonment beyond that authorized by a jury's verdict affects a defendant's substantial rights. *Id.* at 544. *Page* was a classic *Apprendi* case, dealing with a sentence exceeding the maximum, not one, as here, dealing with escalating minimum sentences.

Mazzio also relies on *Gibson v. U.S.,* 271 F.3d 247 (6th Cir.2001), which is very similar to his case. The *Gibson* panel found that an increase in mandatory minimum penalties under 21 U.S.C. § 841 affects the defendant's substantial rights, as well as the fairness of the judicial proceedings, and vacated his sentence and remanded the case to the district court for re-sentencing. Mazzio's reliance on *Gibson* is well placed in that one panel of this Circuit is bound by the decision of another one absent an interceding Supreme Court opinion. *See, e.g., Salmi v. Sec'y of Health*

fourth prong—whether the sentencing error seriously affects the fairness, integrity, or public reputation of the judicial proceedings. In *Cotton*, the Supreme Court determined the fairness, integrity, or public reputation of the judicial proceedings is not seriously affected when evidence of the quantity of drugs involved is "overwhelming" and "essentially uncontroverted." [9]

The facts of *Cotton* are very similar to those here. Both cases involved violations of § 841 and both defendants were sentenced under § 841(b)(1)(A) based on a quantity of drugs never proved to the jury beyond a reasonable doubt. Cotton was sentenced under the provision of § 841(b)(1) that applies to a quantity of at least 50 grams of cocaine base. This provision is contained in the same section and carries the same penalties as the provision Mazzio was convicted under, referring to possession of five or more kilograms of cocaine. So, under the statute, the two crimes are indistinguishable.

In *Cotton*, the Supreme Court considered it "overwhelming" and "essentially uncontroverted" evidence that the defendant possessed at least the requisite fifty grams based on evidence that the government had in fact seized somewhere in the neighborhood of 380 grams. The Court also found it significant that a co-conspirator testified that she had helped the defendant bag at least a kilogram of cocaine herself. Based on this evidence, the Court stated: "Surely the grand jury, having found that the conspiracy existed, would have also found that the conspiracy involved at least 50 grams of cocaine base." *Cotton*, —— U.S. at ——, 122 S.Ct. at 1786.

Comparatively, Mazzio was found with approximately ten kilograms of cocaine, and he acknowledges in his brief that approximately ten kilograms of cocaine were found in the Intrepid. Moreover, he admitted the approximately ten kilograms of cocaine produced into evidence at his trial was the cocaine found in the Intrepid. "Approximately ten" kilograms may be anywhere from eight to twelve, but it is certainly more than five. Had the threshold limit of § 841 been ten kilograms, we should likely question whether the "overwhelming" and "essentially uncontroverted" evidence required by *Cotton* was present. However, since the threshold is five, we find that "approximately ten" kilograms is "overwhelming and essentially uncontroverted" evidence that Mazzio possessed the requisite amount of drugs for his sentence. After *Cotton*, it is clear that *Apprendi* cannot be used as a crutch to aid defendants whose guilt is otherwise not in

---

and *Human Services*, 774 F.2d 685, 689 (6th Cir.1985). *Cotton* serves as that interceding opinion. It is very similar to this case and clarifies the parameters of the fourth prong of the plain error test. In *Cotton*, the Supreme Court did not provide analysis of the third prong, so it is unclear where this Court's reasoning in *Page* and *Gibson* now stand. We will follow the lead of the Court in *Cotton* and dispense with any analysis of the third prong in favor of the fourth. Any discussion of the third prong here would be superfluous because an examination of the fourth prong in light of *Cotton* disposes of the plain error analysis. *Gibson*, however, without question has been overruled in regard to its analysis of the fourth prong.

9. The Court in *Cotton* did not devise a new rule. The "overwhelming" and "essentially uncontroverted" standard was first introduced in *Johnson v. U.S.*, 520 U.S. 461, 470, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). However, the decision in *Cotton* is the first time that the Court has applied this standard to an *Apprendi* plain error case or to a § 841 case. Incidentally, this Court has recently decided two other cases implementing *Cotton*'s interpretation of the fourth prong. *See U.S. v. Harris*, 293 F.3d 970 (6th Cir.2002); *U.S. v. Cleaves*, 299 F.3d 564 (6th Cir.2002).

doubt. It serves only to protect that defendant who has a legitimate doubt as to whether the evidence could have been sufficiently proved against him:

> The real threat then to the 'fairness, integrity, and public reputation of judicial proceedings' would be if respondents, despite the overwhelming and uncontroverted evidence that they were involved in a vast drug conspiracy, were to receive a sentence prescribed for those committing less substantial drug offenses because of an error that was never objected to at trial.

*Cotton*, —— U.S. at ——, 122 S.Ct. at 1787. In light of *Cotton*, and the similarity of these facts thereto, we find that this sentencing error does not affect the fairness, integrity, or public reputation of the judicial proceedings. The sentence of 240 months imposed upon Mazzio by the district court is hereby affirmed.

### IV.

Lastly, Mazzio contends his sentence should be vacated because the statutes he was convicted and sentenced under, 21 U.S.C. § 841(b)(1)(A) and § 846, are facially unconstitutional. Mazzio argues the statutes are unconstitutional because Congress intended, in § 841(b)(1)(A), for the quantity of drugs involved to be a sentencing factor found by the judge by a preponderance of evidence at sentencing, instead of an element to be found by a jury beyond a reasonable doubt. Mazzio contends such a scheme cannot stand post-*Apprendi*.

■ Mazzio is reading beyond the face of the statute. In § 841, Congress never specified that the trial judges must be the decision makers in determining the quantity of drugs. Therefore, Mazzio is wrong when he states that "Congress clearly intended, and so defined, Subsection 841(b) to state penalties set by Congress to be determined at sentencing." While Mazzio is correct when he states that "a statute or part of statute is facially unconstitutional if 'no set of circumstances exists under which the [statute or subpart] would be valid," this is not the case here because circumstances do exist under which § 841 is quite valid. Simply, if the prosecutor charges the quantity of drugs in the indictment and proves it to the jury, the statute is compliant with the constitutional requirements of *Apprendi*.

In an unpublished opinion, this Court has previously concluded that this statute is constitutional. In *U.S. v. Talley*, 15 Fed.Appx. 215, 2001 WL 814936 (6th Cir. 2001), we stated that Congress drafted § 841 without regard to who the decision maker would be. The *Talley* Court followed the lead of several other circuits in determining this issue, stating:

> If Congress had specified that only judges may make the findings required by § 841(b), or that these findings must be made by a preponderance of the evidence, then § 841 would create a constitutional problem. But the statute does not say who makes the findings or which party bears what burden of persuasion. Instead the law attaches effects to facts, leaving it to the judiciary to sort out who determines the facts, under what burden.

*Id.* (quoting *U.S. v. Brough*, 243 F.3d 1078, 1079 (7th Cir.2001)). Accordingly, Mazzio's claim is without merit and we affirm the district court, upholding the constitutionality of 21 U.S.C. §§ 841 and 846.

### V.

In conclusion, for the foregoing reasons we uphold the decision of the United States District Court for the Eastern District of Michigan and affirm the conviction and sentence of Anthony Mazzio; the denial of his motion for a new trial; and the

decision that 21 U.S.C. §§ 841 and 846 are not facially unconstitutional.

AFFIRMED.

Before GUY, SILER, and BATCHELDER, Circuit Judges.